WILLIAM F. WAIT et al., Respondents, *v.* JOHN E. BORNE et al., Appellants.

An agent authorized to sell the goods of the principal is, in the absence of any express limitation of his powers, empowered to make any declaration in regard to the property, or to do any act which may be found necessary to make a sale and which is usual and incidental thereto.

Where, therefore, it is usual in the market, on sale of that kind or class of goods to give a warranty, the agent may give it; but if the goods are of a description not usually sold with warranty, and the agent has no actual authority to warrant, none may be implied.

In any case authority may be implied only to warrant the goods the agent sells at the time of the warranty; in the absence of express authority, his warranty will not extend to subsequent sales made, not by him, but by the principal.

In an action to recover damages sustained by plaintiffs by reason of the breach of an alleged express warranty made upon sale to them by defendants of a quantity of oil, it appeared that T., defendants' agent, exhibited to plaintiffs, who were carpet manufacturers, a sample of oil, which he then represented defendants were manufacturing by a newly-discovered process and were introducing; that it was much more valuable than the oils commonly used in manufacturing carpets and required a less quantity, less labor and the use of less of other material, and was better in other respects than other oils used for the same purpose; and that if plaintiffs would use the oil in manufacturing their carpets defendants would guarantee the above facts and pay all loss and damage resulting from its use. Plaintiffs thereupon ordered one barrel which their testimony showed they purchased to see how its use would result, and subsequently they ordered more to be as the order stated, "the same as we had of you." *Held*, that the evidence did not authorize an inference of an intent to extend the warranty to subsequent sales, and that a submission of the question to the jury was error; also that as the warranty of the agent was broader than that implied upon such a sale, *i. e.*, that the oil.

was reasonably fit for the purpose for which it was purchased, the error required a reversal.

*It seems*, that the proper rule of damages in such a case would generally be the difference between the market value of the carpets as they would have been if the oil used in their manufacture had been equal to the warranty and their value as they were; but in case the plaintiffs sold any of them for more than their market value, after knowledge of the vicious quality of the oil, and under circumstances leaving no liability on their part to the purchasers, the measure of damages would be the difference between the price received and the value of the carpets as they would have been if the oil had been as recommended.

The complaint alleged that some of the carpets were sold and then taken back; some sold and the prices reduced, and that large reductions were made to other customers. It also alleged that the carpets were inferior, unsalable and not merchantable. Plaintiffs served a bill of particulars as to the sales. *Held*, that while as to the items contained in the bill, plaintiffs should be strictly confined thereto, evidence looking to general damage was properly received, as applicable to the carpets not sold, and for the purpose of proving the breach of the warranty and its extent.

(Argued October 24, 1890; decided December 2, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made March 26, 1889, which reversed an order setting aside a verdict in favor of plaintiffs and granting a new trial and directed judgment on verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James L. Bishop* and *Charles W. West* for respondents. The construction of the contract between the parties was matter of law to be determined by the court. ( *Westcott* v. *Thompson*, 18 N. Y. 363 ; *Brady* v. *Cassidy*, 104 id. 147, 155 ; *Dwight* v. *G. L. Co.*, 13 id. 341 ; *Chapin* v. *Potter*, 1 Hilt. 366, 375 ; Benj. on Sales, § 613.) It was error to instruct the jury to determine whether the alleged warranty applied only to the barrel of defendants' oil first sold to plaintiffs, or to both that and the two succeeding five-barrel lots. ( *Canter* v. *Hopkins*, 4 M. & W. 399 ; *Hogins* v. *Plympton*, 11 Pick. 97 99 ; *Van Ostrand* v. *Reed*, 1 Wend. 424, 431 ; *De Witt* v.

*Berry*, 134 U. S. 306; *Niles* v. *Culver*, 8 Barb. 208, 209; *Waters* v. *Tompkins*, 14 Hun, 219, 221; *Whitimore* v. *S. B. I. Co.*, 2 Allen, 52; *Lamp* v. *Crafts*, 12 Metc. 353; *Boardman* v. *Spooner*, 95 Mass. 353; *Baker* v. *Read*, 13 Barb. 152, 158; *Crist* v. *Burlingame*, 62 id. 351, 363; Benj. on Sales [Bennett's ed.], § 621; *Learned* v. *Tillotson*, 97 N. Y. 1, 12; *Wait* v. *Borne*, 7 N. Y. S. R. 113; *Craighead* v. *Peterson*, 72 N. Y. 279, 285; *Smith* v. *Tracy*, 36 id. 79, 83; *Nixon* v. *Palmer*, 8 id. 398; *Seymour* v. *Wyckoff*, 10 id. 213, 224; *Benninghoff* v. *A. Ins. Co.*, 93 id. 495; *Roach* v. *Coe*, 1 E. D. Smith, 175; *Baldwin* v. *Burrows*, 47 N. Y. 199, 212, 215; *Smith* v. *Kidd*, 68 id. 130, 142; *Hathaway* v. *Johnson*, 55 id. 93, 96; *Craig* v. *Ward*, 1 Abb. Ct. App. Dec. 454, 460; *Van Vliet* v. *McLean*, 23 Hun, 206, 208; *Wakeman* v. *Dalley*, 51 N. Y. 27, 34; *Weed* v. *Case*, 55 Barb. 534, 548; *March* v. *Falker*, 40 N. Y. 562, 565; *Binnard* v. *Spring*, 42 Barb. 470, 476.) In the absence of an express warranty in the sale of the ten barrels, no warranty can be imported therein by the usage of trade. (*De Witt* v. *Berry*, 134 U. S. 306; *Hopkins* v. *Sage*, 112 N. Y. 530; *F., etc., Bank* v. *Logan*, 74 id. 568, 586; *Holmes* v. *Pettingill*, 60 id. 646; *Markham* v. *Jandon*, 41 id. 235, 245.) As matter of law, appellants have failed to prove the usage claimed by them, and respondents' exceptions thereto were well taken. (Abb. Tr. Ev. 298; *Raines* v. *Totman*, 64 How. Pr. 493; *Thurman* v. *Wells*, 18 Barb. 500; *Holloway* v. *Stephens*, 2 T. & C. 562; *Bassett* v. *Lederer*, 1 Hun, 274; *Gallup* v. *Lederer*, Id. 282; *Willis* v. *Tibbals*, 1 J. & S. 220; *Rawson* v. *Holland*, 59 N. Y. 611, 619; *Fauntroy* v. *Wilcox*, 80 Ill. 477; *Thompson* v. *Ashton*, 14 Johns. 315; *C. E. Bank* v. *N. Bank*, 91 N. Y. 74, 80; *Beirne* v. *Dord*, 5 id. 95, 102; *Bigelow* v. *Legg*, 102 id. 652; *Higgins* v. *Moore*, 34 id. 417, 422; *S. Bank* v. *N. Bank*, 67 id. 458, 463; *Taylor* v. *Ketchum*, 5 Robt. 507, 513.) It affirmatively appeared that defendants were ignorant of the usage claimed. This usage was that of a particular trade, *i. e.*, the manufacture of woolens, and to find defendants' knowledge of it, it must have been brought home to them. (*Higgins*

v. *Moore,* 34 N. Y. 417,426 ; *Rawson* v. *Holland,* 59 id. 611, 619 ; *Groat* v. *Gile,* 51 id. 431, 438 ; *Walls* v. *Bailey,* 49 id. 464 ; *Stoney* v. *F. T. Co.,* 17 Hun, 579, 581; *Boardman* v. *Gaillard,* 1 id. 217, 220 ; 60 N. Y. 614 ; *Bradley* v. *Wheeler,* 44 id. 500 ; *Ripley* v. *Æ. Ins. Co.,* 30 id. 136,160 ; *Wheeler* v. *Newbould,* 5 Duer, 29 ; 16 N. Y. 392; *Barnard* v. *Kellogg,* 10 Wall. 383.) If the usage was of the character claimed by the plaintiffs, it was unreasonable and, therefore, a void usage. (*Dodd* v. *Farlow,* 11 Allen, 426 ; *Boardman* v. *Spooner,* 95 Mass. 353 ; *Coxe* v. *Heisley,* 7 Harris, 243 ; Lawson on Usage, 69 ; *Barnard* v. *Kellogg,* 10 Wall. [U. S.] 383 ; *Wheeler* v. *Newbould,* 16 N. Y. 392, 402 ; *Stoney* v. *F. T. Co.,* 17 Hun, 579 ; *Bryant* v. *C. Ins. Co.,* 6 Pick. 131; 2 Pars. on Cont. 546 ; *Brown* v. *Stoddard,* 10 Metc. 375 ; *Fuller* v. *Robinson,* 86 N. Y. 306 ; *Law* v. *Botaford,* 26 Fed. Rep. 574 ; *Harguous* v. *Stone,* 7 N. Y. 73, 89 ; *McCormack* v. *Sarson,* 45 id. 265 ; *K. B. Co.* v. *Hamilton,* 110 U. S. 108 ; *C. E. Bank* v. *N. Bank,* 91 N. Y. 74 ; *Higgins* v. *Moore,* 34 id. 417, 422 ; *Scott* v. *McGrath,* 7 Barb. 53 ; *Martin* v. *Farnsworth,* 40 N. Y. 555 ; Whart. on Agency, §§ 124, 188, 189 ; *Herring* v. *Skaggs,* 62 Ala. 186 ; Benj. on Sales [4th Am. ed.], §§ 595, 624; *Nelson* v. *H. R. R. R. Co.,* 48 N. Y. 498 ; *Tice* v. *Gallup,* 5 T. & C. 51 ; 3 Pars. on Cont. 544 ; *Godman* v. *Armstrong,* 28 Me. 91.) An express warranty only having been pleaded, testified to and submitted to the jury, the verdict cannot be sustained upon the theory of an implied warranty. (*De Witt* v. *Berry,* 134 U. S. 306 ; *Mumford* v. *McPherson,* 1 Johns. 414 ; *Sands* v. *Taylor,* 5 id. 395 ; *Beck* v. *Sheldon,* 48 N. Y. 365 ; *Prentice* v. *Dike,* 5 Duer, 220, 223 ; *Brown* v. *Tuttle,* 66 Barb. 169, 172 ; *Burr* v. *DeLa Vergne,* 102 N. Y. 418; Broom's Leg. Max. 657, 659 ; *Dickson* v. *Zizinia,* 10 C. B. 602 ; *Parkinson* v. *Lee,* 2 East. 314 ; Biddle on Warranties, 253 ; *Bell* v. *Dayg,* 60 N. Y. 528, 530 ; *Post* v. *Russell,* 1 Johns, 24, 31 ; *Mason* v. *Jones,* 13 Barb. 461, 478 ; *Hall* v. *Samson,* 19 How. 487, 489 ; *Morey* v. *F. L. & T. Co.,* 14 N. Y. 302, 306 ; *McGraw* v. *Fletcher,* 35 Mich. 104, 106 ; *Garrison* v. *Marie,* 1 How. Pr. [N. S.] 348, 356 ; *Steinbach* v. *R. F. Ins. Co.,* 77

N. Y. 498, 502; *Riley* v. *A. S. Bank*, 36 Hun, 513, 522; *Rochermund* v. *Clark*, 46 N. Y. 354, 357.) The letter from Tucker to defendants, ordering the first barrel of oil to be sent to plaintiffs, was improperly excluded. (*Ins. Co.* v. *Moseley*, 8 Wall. 397, 408; Abb. Tr. Ev. 265, 404; 1 Greenl. on Ev. [13th ed.] §§ 101, 108, 116; *Van Rensselaer* v. *Morris*, 1 Paige, 13; *H. M. Co.* v. *Farrington*, 16 Hun, 591; 2 Best on Ev. [Wood's Am. ed.] § 495; *Robinson* v. *Lyle*, 10 Barb. 512, 517; *Brown* v. *Richardson*, 20 N. Y. 472; *McIntyre* v. *Clapp*, 31 id. 569; Wood on Ev. 348–367; *Sims* v. *Sims*, 75 N. Y. 466, 468; *Beaver* v. *Taylor*, Abb. Tr. Ev. 241, 320–323.) Error was committed in excluding defendants' proof, as to the effect of further purchases, under the usage of "trial and approval." The exceptions to admission of Tucker's declarations, as proof of his authorizations from defendants to make the warranty alleged, were well taken. (*Stringham* v. *S. N. Ins. Co.*, 4 Abb. Ct. App. Dec. 315, 319, 320; *Marvin* v. *Wilber*, 52 N. Y. 270, 273; *Payne* v. *Potter*, 9 Ia. 549, 551; *Coon* v. *Gurley*, 48 Ind. 199; *Fowler* v. *H. M. Co.*, 20 W. D. 521; *Thurman* v. *Wells*, 18 Barb. 500; *Holloway* v. *Stephens*, 2 T. & C. 262; *Marvin* v. *U. L. Ins. Co.*, 85 N. Y. 278; *Stainer* v. *Tyson*, 3 Hill, 279, 282.) Error was committed in not confining plaintiffs in their proof of damage to their bill of particulars thereof. (*Bowman* v. *Earle*, 3 Duer, 691; *Matthews* v. *Hubbard*, 47 N. Y. 428; *Dwight* v. *G. L. Ins. Co.*, 84 id. 493; *People* v. *Nolan*, 10 Abb. [N. C.] 471, 476, 478; *Stevens* v. *Webb*, 12 Daly, 88, 91; *McPhillips* v. *N. Y. & N. H. R. R. Co.*, 13 id. 365; *Baird* v. *Daly*, 68 N. Y. 547; *Brown* v. *Richardson*, 20 id. 472; *Hawley* v. *Hatter*, 9 Hun, 134; *Wigand* v. *Dejonge*, 18 id. 405, 406.) The usage of "trial and approval" pleaded and proven by appellants, stands wholly uncontradicted by respondents. Appellants' exceptions to the denial of a nonsuit on that ground are, therefore, good. (*Easton* v. *Clark*, 35 N. Y. 225, 232; *White* v. *Fuller*, 47 Barb. 267, 271; *Martin* v. *Farnsworth*, 49 N. Y. 555, 558; *Walsh* v. *H. Ins. Co.*, 73 id. 5; *Dozier* v. *Freeman*, 47 Miss. 647, 660; *Wait* v. *Borne*, 7

N. Y. S. R. 113, 118; *Brown* v. *Elliot*, 45 How. 182, 189.)
There was no competent proof of the amount of carpet damaged. (*Cook* v. *Brockway*, 21 Barb. 331; *Morehouse* v.
*Mathews*, 2 N. Y. 514; *Teerpenning* v. *C. E. Ins. Co.*, 43 id.
279; *Hollis* v. *Wager*, 1 Lans. 4; *Brown* v. *Elliott*, 45 How.
182, 189.) Plaintiffs were guilty of contributory negligence
in relying on the alleged warranty without inquiry from defendants as to their salesman's power to make it. (Wharton on
Agency, §§ 137, 139; *Fox* v. *Everson*, 27 Hun, 355; *Melvin*
v. *Wood*, 3 Keyes, 533; *Starkweather* v. *Kittle*, 17 Wend. 21;
*Parsons* v. *Sutton*, 66 N. Y. 92, 96: *Brown* v. *Elliott*, 45
How. Pr. 182, 189; Story on Agency [9th ed.], § 133; *Dozier*
v. *Freeman*, 47 Miss. 647; *Smith* v. *Perry*, 29 N. J. L. 74;
*Thurman* v. *Wells*, 18 Barb. 500, 519; *Stainer* v. *Tyson*, 7
Hill, 279, 282.) The plaintiffs were further guilty of negligence in their use of the oil in manufacturing carpets. (*Fox*
v. *Everson*, 27 Hun, 355; 3 Wait's Pr. 171; *Dascomb* v. *B.,*
*etc., R. Co.*, 27 Barb. 321; *Calkins* v. *Barger*, 44 id. 424;
*Labar* v. *Koplin*, 4 N. Y. 547, 549; *People* v. *Cook*, 8 id. 67,
74; 3 Wait's Pr. 170; *Carpenter* v. *Smith*, 10 Barb. 663;
*Milton* v. *H. R. S. B. Co.*, 37 N. Y. 210; *Dounce* v. *Dow*,
64 id. 411, 416; 6 T. & C. 653; *Draper* v. *Sweet*, 66 Barb.
145; *Stevenson* v. *Stewart*, 7 Wkly. Dig. 352; *Ely* v. *O'Leary*,
2 E. D. Smith, 355; *Warren* v. *Van Pelt*, 4 id. 202; *Leavenworth* v. *Parker*, 52 Barb. 132; Benj. on Sales, § 900.) The
rule of damages laid down by the court was erroneous. (*Rector, etc.,* v. *Higgins*, 48 N. Y. 532, 538; 2 Sedg. on Dam.
[7th ed.] 606, 610–612; *Squier* v. *Gould*, 14 Wend. 159;
*Boyar* v. *Burkhalter*, 2 Barb. 525; *Vanderslice* v. *Newton*,
4 N. Y. 130; Moak's Van Santvoord's Pleadings, 429; *Ferguson* v. *Ferguson*, 2 N. Y. 360.) The plaintiffs failed to
show damage, as alleged in the complaint, from the breach of
the alleged warranty, and it was error to refuse the motion for
nonsuit on that ground. (*Wright* v. *Delafield*, 25 N. Y. 265,
270; *Chamberlain* v. *Fobes*, 3 T. & C. 277; Moak's Van Santvoord's Pleadings, 787; *Draper* v. *Sweet*, 66 Barb. 145, 148;
*Holden* v. *Clancy*, 68 id. 590; *Fox* v. *Everson*, 27 Hun, 355.)

*William F. Cogswell* for respondents. There was an implied warranty that the oil was reasonably fit for the purpose to which it was to be applied. (Benj. on Sales, § 657; *Jones* v. *Bright*, 5 Bing. 533–544; *K. B. Co.* v. *Hamilton*, 110 U. S. 108; *Shepherd* v. *Pybus*, 3 M. & G. 868; *Jones* v. *Just*, L. R. [3 Q. B. Div.] 197; *Cunningham* v. *Hall*, 4 Allen, 268; *Leopold* v. *Van Kirk*, 27 Wis. 152; *Brenton* v. *Davis*, 8 Blackf., 317, 318; *Van Wyck* v. *Allen*, 69 N. Y. 61; *Parkinson* v. *Lee*, 2 East. 314; *Seixas* v. *Wood*, 2 Caine, 48; *Sweet* v. *Colgate*, 20 Johns. 196; *Hawkins* v. *Pemberton*, 51 N. Y. 198, 203.) It has been said in this case, in reference to the doctrine of implied warranty, that it was not applicable because the pleadings were not adapted to such a claim. (*N. Y. Ins. Co.* v. *N. W. Ins. Co.*, 23 N. Y. 357.) The law implies an authority to Tucker, the selling agent of the defendants, to give a warranty naturally given on the sale of such an article. (*Nelson* v. *Cowing*, 6 Hill, 336; *Tice* v. *Gallup*, 2 Hun, 446; *Ahern* v. *Goodspeed*, 72 N. Y. 108, 114; Benj. on Sales, § 624; *White* v. *Miller*, 71 N. Y. 118; *Smith* v. *Tracey*, 36 id. 79; *Upton* v. *S. C. Mills*, 11 Cush. 586.) By adopting the sale and receiving the purchase-price, which was the result of the sale, the defendants are liable upon the warranty of their agent, which was the producing cause of such purchase-price. (*Bennett* v. *Judson*, 21 N. Y. 238; *Churchill* v. *Palmer*, 115 Mass. 310, 323; *Mundorf* v. *Wickenham*, 63 Penn. St. 87; *Baldwin* v. *Burrows*, 47 N. Y. 199.) If the warranty was merely the implied one that it was fit for the purpose for which it is sold, the rule is well settled that the defendants are liable for all the consequences naturally and in the usual course of things growing out of the breach of such warranty. (*Passinger* v. *Thorburn*, 34 N. Y. 634; *Bonadale* v. *Brunton*, 8 Taunt. 535; *Jones* v. *Bright*, 5 Bing. 533; *Brown* v. *Egergon*, 2 M. & G. 279; *Randall* v. *Roper*, El., B. & El. 84; *Smeed* v. *Foord*, 1 El. & El. 602; *White* v. *Miller*, 71 N. Y. 118; Sedg. on Dam. [4th ed.] 333; *Stillman* v. *Tuttle*, 45 Barb. 171.).

P E C K H A M, J. This action was brought by the plaintiffs for the purpose of recovering damages alleged to have been sustained by them by reason of the breach of an alleged warranty made by the defendants in the sale of certain oil to the plaintiffs. The plaintiffs had a verdict at the Circuit, which, upon motion made upon the trial judge's minutes, was by him set aside and a new trial granted. On appeal from that order to the General Term that court set aside the order granting the new trial and ordered judgment upon the verdict for the plaintiffs. Pursuant to that order judgment was duly entered in favor of the plaintiffs and against the defendants, and from that judgment the defendants have appealed here.

The plaintiffs allege in their complaint that they were and for a long time prior to the spring of 1884 had been partners in business, engaged in the manufacture and sale of carpets at Auburn, in the state of New York. That in February, 1884, the defendants' agent came to plaintiffs' factory in Auburn with a sample of so-called Breton wool oil, and that the agent of defendants then represented to plaintiffs that this oil was manufactured only by them and by a newly-discovered process; that it was a much more valuable oil than the oils commonly used in manufacturing carpets, and required a much less quantity and the use of much less other materials in value and amount, and much less labor to accomplish the same results, and that it was better in other respects than the other oils used in manufacturing carpets. The agent further stated that if the plaintiffs would use the oil in their factory and in manufacturing their carpets, the defendants would guarantee the above facts and would pay all loss and damage to the plaintiffs resulting from its use.

The answer set up several defenses unnecessary to state more particularly.

Upon the trial the plaintiffs proved that Mr. Tucker came into their office and alleged that he was the agent of the defendants, and that he was introducing wool oil which was a new process of manufacture and was sold only by the defendants; that it was a very efficient oil and cheaper than the oil

which the plaintiffs were then using, and that it was equal to the Elaine or any other animal oil, and that he would guarantee the oil to be equal to any oil in the market, Elaine or any other oil, and that the defendants would guarantee the plaintiffs from any trouble in its use.  This was the testimony of Mr. Nye, one of the plaintiffs.  Mr. Wait, the other plaintiff, was sworn and testified substantially to the same thing so far as the guaranty was concerned.  He testifies that Tucker said the defendants would guarantee the oil equal to any animal wool oil; that it would go as far on the wool and remain as long on the wool and scour out easier, and that the defendants would guarantee the plaintiffs against any damage to their goods arising from its use.  The plaintiffs then ordered a barrel, and said if it worked well they would order more.  When asked why they ordered but one barrel, Mr. Nye said, " to see if it would work.  If there was nothing the matter with it we would order more."

Mr. Wait says, " we ordered one barrel first to see if there was anything that we should find in any way that we did not like; we would not order more ; we wanted to be satisfied ; there could be no guaranty great enough if the oil was bad and we knew it; we bought one barrel to try it; in that sense."  This was all the evidence offered, on the part of the plaintiffs, as to what the contract of guaranty really was.

This barrel was ordered in February, 1884, but was not shipped from the city of New York, where the defendants had their place of business, until the 4th of March, 1884.  On the twenty-eighth of March the plaintiffs ordered five barrels more of the oil by letter as follows :

"NYE & WAIT, *Carpet Manufacturers,*

"AUBURN, N. Y., *March 28th,* 1884.

" MESSRS. BORNE, SCRYMER & Co., 224 *Front street, N. Y.:*

" GENTLEMEN — You may ship us via N. Y. C. & H. R. R. five barrels ' Breten ' same as we had of you March 4.

"Yours truly,

" NYE & WAIT."

This oil was shipped about April 8, 1884.   On the 6th of May, 1884, the plaintiffs ordered five barrels more by letter as follows:

> " NYE & WAIT, *Carpet Manufacturers,*
>
>           "AUBURN, N. Y., *March* 6, 1884.
>
> " MESSRS. BORNE, SCRYMER & Co.:
>
> " GENTLEMEN — Please ship us via N. Y. C. & H. R. R. 5 barrels Breton Wool oil.
>
>                    " Yours truly,
>
>                         " NYE & WAIT."

Assuming the truth of the evidence, on the part of the plaintiffs, as to what took place at the time of the sale of the first barrel of oil in February, 1884, between themselves and Tucker, the agent of the defendants, the question arises as to the construction to be given to the contract of guaranty therein related.   Upon this subject the learned judge at the trial charged the jury that it was for them, in view of all the circumstances of the case, to say whether the guaranty if made was intended by Mr. Tucker and was received by the plaintiffs as bearing not only upon that barrel of oil then bought, but as bearing upon oil subsequently bought as a result of the conversation which introduced the oil to the plaintiffs; that, so far as the immediate contract between Tucker and the plaintiffs was concerned, it was finished when the barrel of oil was delivered to the plaintiffs, but he submitted to the jury as bearing upon the question of damages, whether it was intended then by Tucker, in the further carrying out of the power vested in him, to introduce the oil and to induce people to buy it and use it permanently in their business, to guarantee not only the barrel then sold, but such oil as they should subsequently buy of the defendants, and whether it was understood by the plaintiffs that that guaranty was intended to be made.   If the contract was simply that Tucker agreed to guarantee this one barrel, and they said they would take that barrel, and if they liked it, would buy more, and they intended to rely on their own judgment in buying more, the jury might properly find that the only damages the defendants must pay

are the damages from the use of the first barrel. But it the jury find there was a guaranty, and it was intended by Tucker and understood by the plaintiffs that the guaranty was intended to induce them to introduce the oil and to continue to use it, the jury would have a right to find that the contract of guaranty was to include the oil subsequently purchased, and so to charge the defendants with the damages occasioned not only by the first barrel of oil, but by that subsequently purchased.

Although there was no exception in strictness to this portion of the charge of the learned judge, the counsel for the defendants did request him to charge "that there is no evidence of any express warranty from defendants to plaintiffs except as to the use by plaintiffs of the first barrel of 'Breton' sent them by defendants." This was declined and the defendants excepted.

Upon the coming in of the verdict the defendants made a motion for a new trial, among other grounds, upon exceptions taken during the course of the trial, and the learned judge, upon a review of his charge, held that he erred in submitting to the jury the construction to be given to the contract testified to on the part of plaintiffs, and he said : " On consideration I am inclined to think that the statement cannot be construed to bind the defendants to a warranty of all the oil which they might ever sell afterwards, and I can see no place where the warranty can stop short of that, if it is construed beyond the sale by Tucker. His object of introducing the oil was accomplished by a sale of one barrel, if it proved satisfactory, and it is not necessary to extend the contract to give force to that word. But I do not think the statement that he was introducing the oil has any force in construing the contract. The subject of the contract was the oil then sold. The warranty applied to that. With that sale it was at an end, and the parties had no longer any relations with each other. As applied to the sale then made, the warranty is plain, clear and unambiguous. It was fully satisfied by confining it to that sale, and to allow the jury to extend it to all the oil was error."

We agree with the learned judge in the views expressed by him in his more mature consideration of the subject.

The transaction between Mr. Tucker and the plaintiffs resulted simply in the sale of one barrel of oil, and upon the plaintiffs' account of what took place at the interview that sale was accompanied with an express guaranty in regard to the oil then sold.

There was nothing in the language of Mr. Tucker, as testified to by the plaintiffs, from which any inference could appropriately be drawn that the guaranty which he gave in regard to the oil which he then sold was to apply to other oil which the plaintiffs might possibly decide to buy at some future time of the defendants directly. Both the plaintiffs admitted that they purchased the small quantity of one barrel for the very purpose of seeing how its use would result, and that if it were satisfactory then they might buy more if they chose; but they were under no obligation to order a particle more. It was error, therefore, to leave to the jury for them to draw an inference from undisputed facts, or from statements which left no room for inference that Mr. Tucker intended to bind the defendants for all future sales that might be made by them to the plaintiffs.

But there is another ground upon which the evidence was erroneously submitted to the jury. Whatever may be the law in regard to the customary power of an agent to warrant the article which he sells, there is no case which I have found after considerable search in which it has ever been held that an agent to sell a particular article has the right not only to warrant the article which he then sells, but to warrant all which may thereafter be sold by his principals to the party with whom he closes his own sale. There is no principle upon which such a claim can be founded. The idea upon which is founded the right to warrant on the part of an agent to sell a particular article, is that he has been clothed with power to make all the common and usual contracts necessary or appropriate to accomplish the sale of the article entrusted to him. And if in the sale of that kind or class of goods thus

confided to him it is usual in the market to give a warranty, the agent may give that warranty in order to effect a sale, and the law presumes that he has such authority. If the agent, with express authority to sell, has no actual authority to warrant, no authority can be implied where the property is of a description not usually sold with warranty. (*Smith* v. *Tracy*, 36 N. Y. 79.)

This court has held that an agent authorized to sell property, in the absence of any express limitation of his powers, is authorized to make any declaration in regard to the property, or to do any act which may be found necessary to make a sale and which is usual and incidental thereto. (*Ahern* v. *Goodspeed*, 72 N. Y. 108.) It must be usual for the agent to have power to warrant in order to carry out the object and to sell the article confided to him for sale before the law will imply such power, and it is a question for the jury to determine what is usual. (Benjamin on Sales, Bennett's notes, § 624.)

But nowhere is there any rule laid down that I have been able to find, enlarging the scope of the agent's power to warrant beyond the necessities of the case, or so as to include subsequent sales not made by himself, but by his principals. It would, in my opinion, be granting to an agent altogether too broad a power, and it would be placing the principal too much at the mercy of the agent who, for the purpose of accomplishing a sale of a small amount, might lead his principals into liabilities of which they knew nothing and might know nothing until a claim for their settlement was presented to them. It is not necessary to grant to agents any such extensive powers in order that they may accomplish the purpose for which they are engaged, viz.: the present sale by them of an article which belongs to the principal. Public policy, I think, forbids any such inferential powers, and if vendees seek to place liabilities of that nature upon principals, it is not too much to require that they should show actual authority of the agent to make such contracts.

The error committed by the learned judge in his charge to the jury would thus lead to a reversal of the judgment, but

in order to avoid the consequences of such error, the plaintiffs say that the same guaranty which they claim was proved to have been expressly made by the agent of the defendants, the law itself makes upon the sale of an article of this nature under the circumstances above stated. It is argued that where a man sells an article he thereby warrants that it is merchantable and fit for some purpose; that if he sell it for a particular purpose, he thereby warrants it reasonably fit for that purpose. The evidence in this case undoubtedly shows that the sale was made of a manufactured article and by a secret process known only to defendants and with their knowledge that the oil was to be used for a particular purpose, and upon these facts the plaintiffs base their claim of an implied warranty on the part of defendants that the oil was reasonably fit for the purpose for which it was purchased · (See *Hawkins* v. *Pemberton*, 51 N. Y. 198; *White* v. *Miller*, 71 id. 118; *Van Wyck* v. *Allen*, 69 id. 61; *Kellogg Bridge Co.* v. *Hamilton*, 110 U. S. 108, and cases cited in the opinion of HARLAN, J.)

The plaintiffs claim that their complaint contained all the elements of a good pleading on the implied warranty, and is not vitiated as such because it contains more. Perhaps a liberal construction of that pleading would bring us to the same conclusion. It is undoubtedly the truth, however, that the undertaking specially relied upon was the express one given by the defendants' agent at the time of the sale of the first barrel of oil, for the complaint alleges that the agent represented to the plaintiffs the facts as already alluded to. The case was tried on no theory of an implied warranty. The learned judge in his charge to the jury stated in terms that whatever may have been the defects in the oil, the defendants could not be held responsible for it unless there was a guaranty by Tucker, and unless he was authorized to give that guaranty. In another portion of his charge the learned judge said to the jury: "You are to come to a conclusion, first whether Tucker, by the custom of the oil business, had authority to warrant these goods in the manner in which it

is claimed he did warrant them. Then, you are to consider whether the plaintiffs have established by a fair preponderance of evidence that Tucker did warrant the goods and guarantee the plaintiffs against all loss or damage if they used the oil in their business, and whether the plaintiffs bought the goods understanding it to be a guaranty and " relying upon that guaranty." It will be observed that the guaranty as testified to by the plaintiffs is not precisely similar to that which the law implies. That which was testified to was "that the defendants would guarantee" that the oil was equal to any animal wool oil; that it would "go as far on the wool and remain as long on the wool and scour out easier, and that they would guarantee the plaintiffs against any damage to their goods arising from its use." This is a somewhat broader liability than is that which is implied by the law. It is in the latter case only that it shall be reasonably fit for the use for which it is intended; and it may be thus reasonably fit for that use, and yet not equal to Elaine oil, or it can be imagined that damage might possibly result in some instances from its use, which would be covered by the express guaranty, although not by that which the law implies.

Again, it may be stated that a question may possibly arise and be urged on the part of the defendants, based upon the correspondence between the parties when the first five barrels were ordered. It will be observed that in the written order for those barrels the plaintiffs direct the defendants to ship them five barrels of " Breton, the same as we had of you March 4th," and it may be urged by the defendants that the warranty to be implied upon their sale of the oil on that occasion was that it was the same in quality and substance as the one barrel of oil which they had already furnished, and the defendants may claim that, as matter of fact, the oil was the same in quality and substance as that which had been previously sold by their agent, Mr. Tucker. The defendants might claim that the same question arose in regard to the order for the second five barrels, although it was a little differently worded, and they might urge that the evidence shows, or that they could

on another trial prove that the second five barrels were of the same quality as the first five barrels. We do not intimate any opinion upon the soundness of either of these two propositions. We do say that we ought not to decide finally against the defendants upon both of them in this case, where the trial was upon the express warranty, as testified to by the plaintiffs, and where the judge charged the jury that unless that express guaranty were found, a verdict must go for the defendants. It is sufficient for us to say that those are questions which may be presented upon another trial and which we ought not at this time to foreclose the defendants from presenting.

We think, therefore, that the plaintiffs did not make an answer sufficient to prevent the reversal of this judgment for the error in the charge of the judge already mentioned.

As there must be a new trial, it is proper to say a word in regard to the rule of damages in the case. The learned judge, in his charge to the jury, was right in his view of the general rule applicable to such cases. It is founded upon the basis of giving to the injured party the amount of damage directly and naturally resulting from the defendants' breach of contract. The rule in substance laid down was that the measure of damages is the difference between the market value of the carpets as they would have been if the oil used in their manufacture had been equal to the guaranty, and their value as they in fact were after such use of the oil. This is in general correct. But in case the plaintiffs had sold their carpets after they became aware of the vicious quality of the oil, and such sales had been made under circumstances that left no liability on their part to the purchasers, then the measure of damages would be only the difference between the price actually received and the value of the carpets as they would have been if the oil had been as recommended. This of course is upon the assumption that the price paid was at least equal to their actual value. Thus if the testimony on the part of the plaintiffs showed that the actual value of the carpets was diminished twenty or thirty cents a yard, and they were yet able to sell them to customers who knew the facts, or at auction so that

they received a price only ten cents a yard less than their value would have been, then the ten cents a yard is the measure of damages. The trial court allowed the jury to take the price actually received for the carpets into consideration, as bearing upon the question of value.

We think when the carpets were sold under circumstances as above stated, the jury should have been rigidly confined to the price received as conclusive evidence of value, such price being above the sum stated by plaintiffs as their estimate of such value.

In regard to the evidence under the bill of particulars, we think the exceptions of defendant were not good. The complaint did not allege that all the carpets damaged had been sold. It stated that some of the carpets were sold and then taken back and some sold and then the prices to the customers were reduced, and that large deductions were made to other customers. It also stated that the carpets were inferior, unsaleable and not merchantable. To prove this complaint the plaintiffs were not confined to the bill of particulars. They would be strictly confined to it as to their proof, as to everything coming under any of the items designated therein, but the bill did not assume to state that all the carpets in which the oil was used had been sold, and were contained in items mentioned in such bill. Hence evidence looking to general damage upon carpets was admissible, as it would apply generally to all carpets not sold. It would also be proper for the purpose of proving the plaintiffs' case as to the breach of the guaranty and its extent. Upon the question of damages they must be confined as to the items detailed in the bill to the damage actually sustained. Nor could they add other instances to the items which the bill contained, and which assumed to state all of such items as existed.

The bill was not a bill of items of special damage, which when proved could be added to the total amount of general damages shown by the evidence. On the contrary it assumed to give some of the details which showed the items making up (with others) the general damages sustained, and upon the

trial the plaintiffs had no right to say " we abandon all proof of our so-called special damage, and show that in all 70,000 yards of carpets were damaged by this oil to the extent of twenty cents a yard." That would indeed be to make the bill of particulars wholly useless. Out of this total of damaged carpets must come all that is contained in the bill of particulars, and the amount of damage in those cases must be proved like any other fact by some one who has knowledge thereof.

The judgment must be reversed and the order of the Circuit Court granting a new trial affirmed, costs to abide event.

All concur, except Ruger, Ch. J., not voting.

Judgment reversed and ordered accordingly.