CHARLES H. SHERMAN, Respondent, *v.* BILLINGS, KING & COMPANY, Appellant.

*Warranty — measure of damages for its breach — the damages must be shown specifically — evidence as to the sale of the article.*

In an action brought to recover damages resulting from the breach of a warranty as to the quality of a "wood filler," sold by the defendant to the plaintiff, it appeared that the plaintiff had a contract to finish certain wagons for one Griffin, or his successor, the Glens Falls Buckboard Company, in doing which he used two gallons of the warranted liquid wood filler, purchased of the defendant, but shipped to and paid for by Griffin; the filler subsequently scaled off, leaving the bare wood exposed, and it became necessary to paint the wagons. It further appeared that the wagons were subsequently sold by Griffin, but the

court upon the trial would not permit the defendant to show the price at which the wagons were sold.

The complaint alleged that before the commencement of the action the Glens Falls Buckboard Company had brought an action against the plaintiff for damages resulting from the use of the filler upon the wagons; that the plaintiff gave the defendant notice of the action, requesting it to defend the same, and that judgment therein was recovered against the plaintiff for $582.87 damages and costs; but, although such allegations were denied in the answer, no proof was given on the trial of the recovery of such a judgment; the court, however, directed a verdict for the plaintiff in a sum equal to the amount of the judgment.

*Held,* that mere proof of damage to the wagons, in consequence of the use of the filler, was not sufficient to sustain the plaintiff's claim in the absence of proof that the plaintiff had been compelled to pay Griffin something because of such injury;

That it was erroneous to exclude evidence of the price at which Griffin sold the wagons alleged to have been damaged by the filler, since it did not appear that Griffin had not sold them (although damaged) at a greater price than that which he stated they would have brought had they been properly finished in the first instance;

That if Griffin sold the wagons at a price greater than their market value, with knowledge of the imperfect quality of the filler, and upon terms which left no liability upon his part to his purchasers, the measure of damages was the difference between the price which he received and the value of the wagons as they would have been if the filler had been equal to the warranty;

That the price at which they were sold would have furnished some evidence of their market value.

MAYHAM, P. J., dissenting.

APPEAL by the defendant, Billings, King & Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Warren on the 17th day of June, 1895, upon the verdict of a jury rendered by direction of the court after a trial at the Warren Circuit, and also from an order bearing date the 13th day of June, 1895, and entered in said clerk's office denying the defendant's motion for a new trial made upon the minutes.

*H. A. Howard* and *C. H. Sturges,* for the appellant.

*James H. Bain,* for the respondent.

PUTNAM, J.:

The plaintiff, in the spring of 1892, being engaged in the business of finishing and painting wagons and carriages, and having a con-

tract to finish nineteen wagons for W. B. Griffin, or his successor, the Glens Falls Buckboard Company, purchased of defendant two gallons of liquid wood filler, which its agent warranted was a good filler for finishing wagons. Plaintiff, relying upon the representation and warranty of defendant, took the filler and used it upon the nineteen wagons of said Griffin during the spring of 1892. The filler was not as warranted. When the wagons on which it was used came in contact with water it scaled off and left the bare wood exposed. It became necessary to paint the wagons. Evidence was given to the effect that seventeen of the nineteen wagons of Griffin's were single and two of them double. If properly finished they would have been worth $175 for the singles and $350 for the double ones, and after defendant's filler was used on them they were not worth half as much. The action was brought by plaintiff to recover damages for the breach of warranty of defendant on the sale of the filler. The complaint alleged the facts above set out, and also that before the commencement of the action the Glens Falls Buckboard Company had brought an action against plaintiff for damages occasioned to said wagons in consequence of using said filler; that due notice of the commencement of said action was given to defendant, and also a request that it would defend the same; that defendant neglected to pay any attention to said action and that plaintiff did defend the same; that judgment was duly awarded against plaintiff therein for $500 damages and $82.87 costs.

Defendant in its answer denied any knowledge or information sufficient to form a belief as to the allegations in the complaint in regard to the action of the Glens Falls Buckboard Company or the rendering of a judgment therein against plaintiff.

The trial court held that the plaintiff was entitled to recover as damages the difference in value between the wagons as they were with this filler on them and what their value would have been if the filler had been as recommended, but the court reduced the recovery to the amount of the judgment above referred to, that being the amount claimed in the complaint.

Although the allegations contained in the complaint in regard to the rendition of a judgment in favor of the Glens Falls Buckboard Company for $582.87 for damages on account of using said filler were denied in the answer, no proof was given on the trial of the

recovery of such judgment. In fact, the judgment was not referred to by either party until after both had rested. The defendant then moved to dismiss the complaint on the following, among other, grounds : " There is a fatal variance between the complaint and the proof, in that the complaint alleges a contract between the plaintiff and the Glens Falls Buckboard Company, in and by which he contracted to do work, and did do work, upon 19 carriages, the carriages mentioned, I suppose, in the proof, in that they allege a judgment by the Glens Falls Buckboard Company against Mr. Sherman for damages to the 19 wagons, and a notice to the defendant to defend, and a recovery in that action against the plaintiff."

The trial court denied the motion to dismiss the complaint, and directed judgment in favor of plaintiff for the amount of the judgment set out in the complaint, with interest, to which direction the defendant duly excepted.

The plaintiff having alleged as special damages the recovery of the said judgment against him by the Glens Falls Buckboard Company, and that allegation having been denied in the answer, I think the objection to a recovery interposed by defendant, as above set forth, should have been sustained. The recovery of the judgment so denied in the answer was not admitted upon the trial by defendant. As we have seen, it was not mentioned until the close of the testimony, when the defendant objected to a recovery by plaintiff on the ground of a fatal variance between the complaint and proof, in that the complaint alleged a judgment by the Glens Falls Buckboard Company against plaintiff. Of course, the variance referred to was the failure of plaintiff to prove the judgment which he had alleged in the complaint as special damages. In the absence of proof of the recovery of the judgment alleged in the complaint, it is difficult to understand on what theory a verdict could be directed for the amount of the said judgment, including eighty-two dollars and eighty-seven cents costs.

I infer, however, that the trial judge was of opinion that the plaintiff, notwithstanding the allegation in the complaint in regard to the judgment, was entitled to recover such damages as he proved on the trial he sustained in consequence of the defective filler irrespective of the judgment, such damages being the difference in the value of Griffin's wagons treated with the filler in question and

their value if properly finished. Such damages as shown upon the trial, under the ruling of the judge, exceeded the amount of the judgment as alleged in the complaint. In directing a verdict for the amount of the judgment as so alleged, I conclude the judge intended merely to reduce the amount of the damages he held the plaintiff was entitled to recover, to the amount claimed in the complaint.

It becomes then necessary to determine whether the rule of damages adopted by the trial court was correct. Plaintiff had a contract with Griffin to finish nineteen wagons and bought the two gallons of defendant's filler to use in doing the work. In consequence of the filler not answering the warranty, the wagons of Griffin were damaged. The court held that plaintiff's damages were the amount of the damage to Griffin's wagons in consequence of the defective filler. I am unable to see how an injury to Griffin's wagons damaged plaintiff, unless he was compelled to pay Griffin for such injury. Plaintiff's damages, in consequence of defendant's breach of warranty, were the injury *he actually suffered* in consequence of such breach. For instance, if Griffin had refused to pay plaintiff for his labor in consequence of the defective filler, or he had been compelled to refinish the wagons, or if it had been shown that Griffin obtained a judgment against plaintiff, the plaintiff would have been entitled to recover of the defendant the value of such labor, the cost of such refinishing or the amount of such judgment, as the case might be. But mere proof of damage to Griffin's wagons in consequence of the defective filler was not, as the court held on the trial, sufficient to sustain plaintiff's claim. It was shown on the trial that the filler was shipped to and paid for by Griffin. The second gallon was ordered as well as paid for by him. Under the evidence in this case the court or jury could have very well found that the filler was used on Griffin's wagons by his consent. They could have found that under the contract between plaintiff and Griffin, although the former was to finish the wagons in a good and workmanlike manner, he was to finish them with defendant's filler. If the court or jury had so found, as they could have, from the evidence, Griffin had no claim against plaintiff for damages, and, as far as the evidence shows, plaintiff suffered no injury in consequence of the breach of war-

ranty of defendant. Had the plaintiff shown the recovery of the judgment alleged in the complaint by the Glens Falls Buckboard Company (the successor of Griffin), he would have shown that he sustained damages in consequence of the breach of warranty of defendant. I do not think that mere proof of damage to Griffin's wagons alone was sufficient to justify the judgment.

But if we assume that the rule of damage adopted below was correct I think the trial court, in excluding evidence offered by defendant, inadvertently fell into an error which requires a reversal of the judgment. Griffin was called as a witness by plaintiff, and, among other things, testified that he did not believe that he got for the wagons much more than half what the wagons would have been worth if properly finished. On the examination of the witness by defendant the following question was asked and ruling made, viz. : " Q. At what price did you sell those nineteen wagons ? [Objected to as immaterial and incompetent and not affecting the measure of damages ; objection sustained ; defendant duly excepted.] (By the court.) He may have sold them for more or less than they were worth. If he sold them for more than they were worth, that is not yours, it is his."

I think this ruling was a material error. The question was proper on the cross-examination of the witness. Also the price at which the wagons were sold was some evidence of their market value. But the question to be determined was, what was Griffin's damage in consequence of the defective filler, the trial court holding that the amount of Griffin's was the measure of plaintiff's damages. The single wagons, properly finished, would have been worth $175 each, and the double ones $350. Suppose Griffin had, in fact, sold all the wagons for the prices above specified, notwithstanding their defective finish, I should say that in fact he suffered no damage. The trial court, however, determined that if in fact he sold every wagon for the sum it would have been worth if properly finished, yet his damage was to be measured by the actual value of the wagons as they were with the defective filler on them, and hence he sustained the objection to the question above set out asked by defendant of Griffin. The rule of damages, in a similar case, has been recently passed upon by the Court of Appeals in *Wait et al.* v. *Borne et al.* (123 N. Y. 592). That was an

action to recover for an alleged breach of warranty on the sale of certain oil to be used in manufacturing carpets by the plaintiffs, and which it was claimed did not answer the warranty. A portion of the carpets had been sold. It was held : " That the proper rule of damages in such a case would generally be the difference between the market value of the carpets as they would have been if the oil used in their manufacture had been equal to the warranty and their value as they were; but, in case the plaintiffs sold any of them for more than their market value, after knowledge of the vicious quality of the oil, and under circumstances leaving no liability on their part to the purchasers, the measure of damages would be the difference between the price received and the value of the carpets as they would have been if the oil had been as recommended."

In the case under consideration the wagons had been sold after Griffin knew of the defective character of the filler, and as the defect was, as I judge from the evidence, apparent on inspection of the wagons it is not to be presumed that Griffin incurred liability to purchasers on the sales. Hence, defendant should have been allowed, under the above authority, to show the price Griffin received for the wagons.

The judgment should be reversed and a new trial granted, costs to abide the event.

HERRICK, J., concurred; MAYHAM, P. J., dissented.

Judgment reversed and a new trial granted, costs to abide the event.