(75 App. Div. 72.)

### BLACK et al. v. DUDLEY et al.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1902.)

1. SALES—BREACH OF WARRANTY—DAMAGES—EVIDENCE—SUFFICIENCY.

In an action for breach of warranty of quality of goods, the evidence showed that plaintiff made up the goods in question into garments, and shipped them as orders were received. The first shipments were made in June or August, and were continued till December. Complaints were made within two or three weeks after the first shipment, and the first suit was returned in August or September. It was not shown when the suits returned were sold, nor that they were sold under a warranty which compelled the plaintiff to take them back, though he testified that his traveling salesmen were instructed to warrant them. *Held* insufficient evidence of damage to support a verdict against defendant for the selling price of each suit returned.

Appeal from trial term, Monroe county.

Action by Louis Black and another against John L. Dudley and others for breach of warranty. From a judgment for plaintiffs for $1,207.91, and an order denying a new trial, defendants appeal. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

William B. Hornblower and Porter M. French, for appellants.
George H. Harris, for respondents.

HISCOCK, J.   We conclude that the judgment and order appealed from must be reversed on account of the insufficiency of the evidence offered upon the subject of damages.   Upon and for some time prior to May 11, 1898, the plaintiffs, in the city of Rochester, N. Y., were wholesale manufacturers of, and dealers in, ready-made clothing; and the defendants, in the city of New York, were commission merchants, marketing cloths used for the making of such clothing.   Upon May 11, 1898, the defendants wrote to the plaintiffs a letter of which the following is a copy:

"Messrs. Black & Meyer, Rochester, N. Y.—Dear Sirs:  We send you inclosed samples of three styles of Caxton cassimeres, cut from pieces.  These were made originally on special order, and have sold well at 75c.  We have seen the goods in the garment, and they make up with a good cassimere face.  Can deliver sample pieces at once.
"Yours truly,                     Dudley, Battelle & Hurd,
                                              "Per Bowne."

The samples inclosed in the letter were small ones, and were what was known as "swatches."   The plaintiff Black looked at and examined them, and thereafter asked defendants to send on some sample pieces, as proposed.   These sample pieces contained several yards each.   No further particular examination was made of them by the plaintiffs; they being turned over to their examiner, who inspected them to see that they were free from holes and other such imperfections, but who did not examine them closely, to determine the texture and component parts thereof.   Thereafter, and from time to time down to August 17, 1898, the plaintiffs, under and in accordance with the letter and samples received by them as aforesaid, ordered of the goods in question from the defendants.   They proceeded with the manufacture of suits of clothing therefrom, which, largely through traveling salesmen, they sold and delivered to their customers during the summer and fall of that year.   Some time after this sale and delivery by them commenced,—and we shall refer more particularly to the date hereafter,—it is alleged that their customers commenced to make complaints in regard to the quality of the clothing purchased, and to return suits.   Subsequently this action was commenced, wherein it was claimed by the plaintiffs that defendants, upon the sale of these cloths to them, under their letter and the samples inclosed, expressly warranted said goods to be cassimeres; that as a matter of fact they were not such cassimeres, but were made of cotton and shoddy to an extent which would not be permissible in a true cassimere cloth; that the cloth actually sold was substantially valueless; and they seek to recover damages.   Upon the trial of the case, which is the third one,—the juries having disagreed upon prior trials,—the parties litigated the questions whether defendants' acts amounted to a warranty of the goods as cassimere; whether the latter were cassimere; whether plaintiffs ought not to have discovered, before accepting them, the quality and composition of the goods, assuming that they were defective and deficient; the amount of damages.

The evidence upon the question above stated as to what constituted a cassimere cloth, and whether these cloths were or were not cassimere, was more or less conflicting. The plaintiffs' witnesses were not by any means all agreed as to what did or did not constitute cassimere, and wherein these goods did or did not answer to that description. For the purposes of this appeal we are disposed to assume, however, that there was sufficient evidence to sustain the verdict of the jury that there was a warranty by the defendants of these goods, that the goods did not comply with such warranty, and that the plaintiffs were not guilty of any such failure of duty in respect to examining or returning the goods as barred them from a recovery. As indicated, we do not feel satisfied with the evidence in behalf of the plaintiffs upon which the jury predicated their award of damages, and we will discuss more in detail the facts involved in that branch of the case.

The learned trial justice charged the jury that, if they reached the question of damages, "you have a right to allow to the plaintiffs, and it is your duty to give them, such damages as you think they are entitled to. The damages, according to an agreement of counsel, cannot exceed $6.50 a suit for one hundred and twenty-eight suits, which would amount to the sum of $832." This was the amount allowed by the jury, and was the full price for which plaintiffs had sold 128 suits which were returned to them by their customers.

The case was, in a general way, tried and submitted upon the theory that, if plaintiffs were entitled to recover, they would be entitled to recover the difference between what the suits manufactured by them would have been worth if the cloth had been as warranted, and what they were actually worth with the alleged defects in it. Some slight evidence was given by one of the plaintiffs, framed upon this theory. The suits made from this cloth, and which were sold by plaintiffs, and of which 128 out of 372 were returned, were sold at $6.50 a suit, and the plaintiff Black testifies: "Those garments were worth $6.50 a suit, —just what we sold them for. I wouldn't dare offer them to the public at all. They are worth nothing, as far as I know." Very possibly, this evidence was intended to mean that the suits, if made of cloth such as plaintiffs claimed they were entitled to, would have been worth $6.50, and, made of the cloth as it actually was, were worth nothing. The case, however, upon this branch of it, rested largely upon the evidence in regard to the return of certain suits of clothes. The facts in regard thereto seem to have been the controlling influence upon the jury in respect to the damages. As already stated, they allowed plaintiffs the full selling price of the 128 suits which were returned. By their verdict they assumed that plaintiffs, having sold these suits for $6.50, and having taken them back and refunded therefor, were entitled to the full selling price of the goods, as the measure of their damages. It therefore becomes essential to consider whether the evidence authorized this method of determining the damages. We shall especially consider whether the evidence warranted the finding that plaintiffs were compelled to take back these suits, and did suffer damage to the full amount of the selling price thereof. We do not think that the proofs warrant this view. The evidence indicates that plaintiffs received the orders for garments made of this cloth largely from

traveling salesmen, and that as the orders were received the goods were made up and shipped. In one place the plaintiff Black testifies that they commenced to ship out goods the fore part or middle of June, and commenced to receive complaints with reference to the quality of the goods within two or three weeks after the goods went out. In another place he testifies that they commenced to ship goods in August. The first returned suit came from the Union Clothing Company, in Rochester; and the date of its return is placed by the same witness at one time in the latter part of August, and at another time in the latter part of September. There is no contradiction in the evidence that they continued to ship these goods until in December of that year. There is nothing to indicate during what portion of the entire period of shipment the suits which were returned were sold or shipped. It is beyond question that plaintiffs delivered suits of clothes after they had their attention called to, and had learned of, the alleged defective quality of this cloth. From their methods of doing business, it is not a strained inference that the suits included in the latter shipments must have been made up and must have been shipped upon orders received after they had commenced to receive complaints about the cloth. If plaintiffs sold any of the 128 suits returned after they became aware of the alleged defective quality of the cloth, and such sales were made under circumstances that left no liability on their part to the purchasers, then they were not entitled to take back the suits, and recover from defendants the full selling price thereof, as they did. Wait v. Borne, 123 N. Y. 592, 25 N. E. 1053. If the suits delivered as late as December were manufactured after plaintiffs knew the character of the cloth, they could not recover any increased damages on account of such manufacture.

The indecisive character of the testimony upon these details naturally leads us to consider closely whether the evidence authorized the conclusion that plaintiffs were compelled to take back the suits, and could charge defendants for the selling price thereof, even if we assume that the suits returned were sold before plaintiffs learned of the defective quality of the cloth. The learned counsel for the appellants more than once made the contention that there was no sufficient evidence to show, as claimed by them, that plaintiffs sold any of these garments under such circumstances as compelled or authorized them to take them back and charge defendants. We think he was right in this contention. The evidence did not show that the garments were sold under any such warranty or representation that they were made of cassimere as compelled plaintiffs to take them back, assuming that they were not made of such material. The plaintiff Black testified that his traveling salesmen were directed to sell them as made of such material, but there is not a word of evidence to indicate that this was done. The plaintiff Meyer testified that he sold some of the suits to customers under the representation or warranty, in effect, that they were made of cassimere, but none of the customers so named by him are amongst those who returned their purchases. The plaintiff Black testifies to selling some suits to customers who were amongst those who returned the same, but he gives absolutely no evidence from which we are able to discover that he sold them under any warranty or

77 N.Y.S.—49

representation whatever. We may, of course, conjecture that plaintiffs sold all of these suits before they acquired their information about the construction of the cloth, and we may conjecture that they sold them under a warranty or representation which compelled them to take them back, but we cannot sustain the judgment appealed from by that process. Neither do we feel justified in holding that the right to return the garments in question as deficient and unfit followed a mere sale, without representation or warranty. It is pretty apparent from the evidence that cassimere 54 inches wide in the single fold, and costing only 75 cents per yard, could not be of a first-class quality. A price of $6.50 per suit to plaintiffs' customers could not imply that the goods were made of the highest grade of cloth. Possibly it implied a better and higher grade than that in question is said to have been. Very possibly plaintiffs sold and delivered all of the garments under terms which compelled them to submit to a return thereof. If this is so, however, there must be definite, competent proof of it; and, without such, we do not think that the recovery can be sustained. The judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellants to abide event, upon questions of law only; the facts having been examined, and no error found therein.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event, upon questions of law only; the facts having been examined, and no error found therein. All concur.