# THE ATKINS BROTHERS COMPANY, Appellant, v. SOUTHERN GRAIN COMPANY, Respondent.

### Kansas City Court of Appeals, June 18, 1906.

1. **SALES: Executory Contract: Implied Warranty: Instruction.** In an executory contract for the sale of corn an implied warranty exists that the corn should be sound and merchantable when it arrives at the place of delivery where the sale is to be completed; and amendments of an instruction set out in the opinion are disapproved.

2. ———: ———: ———: **Inspection: Acceptance: Payment: Instruction.** The fact that the buyer inspects or has an opportunity to inspect or accepts or even pays for goods does not waive the implied warranty of quality by the seller since he may accept the goods and rely upon his warranty; and an instruction set out in the opinion is condemned. Cases distinguished.

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback,* Judge.

REVERSED AND REMANDED.

*Botsford, Deatherage & Young* and *Goodwin Crea-son* for appellant.

(1) There was an implied warranty that the corn was merchantable and reasonably fit for the uses to which it was ordinarily put. Benjamin on Sales (3 Amer. Ed. by Bennett), sec. 345; 2 Mechem on Sales, sec. 1340. Brewing Co. v. McEnroe, 80 Mo. App. 429; Babcock v. Trice, 18 Ill. 420; Brown v. Emersin, 66 Mo. App. 63; Grain Co. v. Benbaker, 89 Mo. App. 1; Haner v. Churchill, 29 Mo. App. 676. (2) It makes no difference if plaintiff did accept the corn before inspection of the same. The only office of inspection in executory sales is to determine in what respect and how far the commodity complies with the contract, expressed or implied. Scheiber v. Anderson, 101 Fed.763; 2 Mechem on Sales, sec. 1340; Lee v. Sadderly Co., 38 Mo. App. 201; Cathings v. Hocke, 15 Mo. App. 51; Moore v. Emerson, 63 Mo. App. 137; Electric Light Co. v. Lamar, 140 Mo. 145. (3) Plaintiff did not lose its right of action by exercising ownership after discovering the corn was defective. It still had the right to retain the corn after discovering it was defective, and suing for the difference in its value as it actually was when it reached Shreveport, and its value at Shreveport had it been merchantable corn. Brewing Ass'n v. McEnroe, 80 Mo. App. 431; Martin v. Maxwell, 18 Mo. App. 176; Moore v. Emerson, 63 Mo. App. 137; 2 Mechem on Sales, sec. 1390; Long v. Armsby, 43 Mo. App. 253; Fairbanks, Morse & Co. v. Baskett, 98 Mo. App. 52; Electric Light Co. v. Cleary, 77 Mo. 298.

*M. F. Ringolsky* and *I. J. Ringolsky* for respondent.

(1) This corn, loaded and shipped at Harwood, Missouri, to appellants was good, merchantable corn and in good shipping condition. It was never seen or grown by respondent. And respondent did not know any use for which appellant purchased same. It is admitted re-

spondent made no misrepresentations and practiced no fraud on appellants. (2) Appellants had every opportunity and privilege to inspect the corn before paying draft and taking up bill of lading as per contract and directions of Mr. Landa, but neglected and refused to do so and hence the rule *caveat emptor* applies and bars appellants' right to recover on any implied warranty. Muhr v. Eagle, 7 Mo. App. 590; Buruby v. Bollett, 16 M. & W. 644; Society v. Lawrence, 4 Cowen 440; Holden v. Dakin, 4 John. 421; Welsh v. Carter, 1 Wend. 185; Thompson v. Ashton, 14 John. 316; Lee v. Saddle Co., 38 Mo. 200-6; Moore v. Koger, 113 Mo. App. 423; Hyatt v. Boyle, 5 G. & J. (Md.), 120; Storage Co. v. Wood, 99 Mich. 269; Fruit Co. v. Talifero, 63 S. W. (Tex.) 656; Hoffman v. Yates, 77 Ga. 701; Byrne v. Jansen, 50 Cal. 624; Mixle v. Cohen, 11 Met. (Mass.) 559; Humphreys v. Comlive, 8 Blackford (Ind.) 516; Kohn v. Lindley, 39 Ill. 195; Court v. Snyder, 2 Ind. App. 440; Seller v. Stevenson, 163 Mass. 262; Lumber Co. v. Co., 91 Wis. 667; Hock v. Black, 29 W. Va. 244; Hargonis v. Stone, 5 N. Y. 84. (3) It was incidental to the contract as well as the express directions of Mr. Landa that appellant could inspect the corn before draft was paid, and proof of any custom or usage inconsistent with his contract, and Mr. Landa's directions, was incompetent and contrary to the wise rule of law governing sales of personal property. Barnard v. Kellog, 77 U. S. Sup. Ct. 395; Bank v. Burkhardt, 100 U. S. 692; Grace v. Ins. Co., 109 U. S. 283; Boorman v. Jenkins, 12 Wend. (N. Y.) 506. (4) Mr. Landa did not contend that appellant lost his right of action by exercising ownership over the car of corn; but maintains that appellant had no cause of action against Mr. Landa on the terms and conditions of his contract. (5) Appellant accepted said corn without inspection and resold the same to parties south of Shreveport and shipped it on a different road; hence their conversion and appropriation and diverting of said corn constituted a waiver to all

their rights as against Mr. Landa. Growers v. Gorman, 76 Mo. App. 193; Lynn v. McDonald, 51 Mich. 443; Haas v. Nonemacker, 21 Minn. 486; Decker v. Lombard, 7 Daly 19; Maxwell v. Lee, 34 Minn. 486; Kellog v. Denslow, 14 Crom. 411; Johnson v. Vaugh, 40 Ia. 421; Studor v. Blestein, 115 N. Y. 316; Pierson v. Crooks, 115 N. Y. 539; Iron Co. v. Pope, 108 N. Y. 232; Williams v. Robb, 104 Mich. 242; Underwood v. Caldwell, 102 Ga. 16; Thompson v. Libby, 35 Minn. 443; Lee v. Bangs, 43 Minn. 23; Paving Co. v. Gorman, 103 Mich. 403; Parks v. O'Conner, 70 Tex. 377; Guernsey v. Lumber Co., 87 Cal. 249.

ELLISON, J.—Plaintiff resides at Shreveport, Louisiana, and defendant at Kansas City, Missouri, and both were dealers in grain. Plaintiff ordered of defendant a carload of corn, the agreement therefor being evidenced by the following letter written and sent to the former by the latter, viz.:

"We have booked your order as per your wire of to-day for one car of corn in shuck at 47 1-2c per bu., delivered at Shreveport, our certificate of weight to be accepted as final. The corn will be loaded and gotten to destination as promptly as railroad facilities will permit, but with the understanding that as we do not control the M. K. & T. road no cancellation is permitted if delayed in transit, although we will follow with tracer and do what we can to get to destination as quickly as possible. We thank you for the order and ask a continuance of your valued patronage."

The corn was shipped on the 18th of December and arrived at Shreveport on the 23rd or 24th. Plaintiff paid for the corn on the 24th by paying the draft attached to the bill of lading. They did not inspect it at Shreveport, though by the terms of the bill of lading they had a right to do so, but reshipped in same car to Lake End, a point fifty-six miles further on, where it arrived on the 26th. It was then found to be wet, sour, rotten, and

worthless. Plaintiff refused to take it. The railway company sold it for a nominal sum.

The foregoing contract was what is known as an executory contract for sale of chattels to be procured and there was, therefore, an implied warranty from defendant to plaintiff that the corn would be sound and merchantable when it arrived at Shreveport, the place of delivery where the sale was to be completed. [2 Mechem on Sales, sec. 1340; Babcock v. Trice, 18 Ill. 420; Howard v. Hoey, 23 Wend. 350; Murchie v. Cornell, 155 Mass. 60; Rodgers v. Niles, 11 Ohio St. 48.]

There was evidence on part of defendant tending to show that the corn was sound and merchantable when shipped on the 18th of December. There was also evidence on part of plaintiff tending to show that it was not sound and was not fit for use when it arrived at Shreveport. We consider that the evidence tending to show that the corn was in good condition when it left point of shipment tended to show, by reasonable inference, that it arrived at Shreveport in like good condition six days later; there being nothing to show that it was exposed to injurious influences on the way. So, on the other hand, we consider the evidence tending to show that it arrived at Shreveport in bad condition, if there was any, tends to show that it left point of shipment in bad condition. But it is part of defendant's contention that there was no evidence to show it arrived in Shreveport in bad condition. On the ground of the following consideration we think there was such evidence. It was shown that on arrival at Lake End, only fifty-six miles away, it was in the unmerchantable condition stated and that place was only a half day's journey by railroad. So, allowing that it arrived at Shreveport on Saturday, the 24th, and was shipped out on Monday, the 26th, arriving at Lake End the same day, there was only the short intervening time of forty-eight hours. It is not reasonable to suppose that corn which was in sound condition and merchantable quality in Shreveport would be wet,

soured and rotten two days afterwards at Lake End, the weather being good and the corn unexposed. If it was in that condition, then almost certainly it was not cound on arrival at Shreveport.

The foregoing was the state of the evidence and under such evidence the court amended plaintiff's instruction over their objection so that it read as follows: "The court instructs the jury that under the contract between plaintiff and defendant for the purchase and sale of the corn referred to in the evidence there was an implied warranty by and from defendant to plaintiff that said corn would be delivered to plaintiff in a reasonably fit condition for *some* purpose for which it is ordinarily used, *or* that it would be merchantable, and if you find from the evidence that said corn was not in a reasonably fit condition for *some* purpose for which it is ordinarily used, and not merchantable, then your verdict must be for the plaintiff. By merchantable as used in this instruction is meant that the corn would be of fair average quality or goodness according to its kind, free from remarkable defects and as such salable in the market at average or ordinary price."

The instruction as offered by plaintiff required that the corn should have been "in a reasonably fit condition for the purpose or purposes for which it is ordinarily used and that it would be merchantable." The change to "some" purpose was improper. So we think it was improper to substitute "or," for "and." The plaintiff was entitled to corn that could be put to the ordinary purposes for which corn is used, and also be merchantable. The buyer, of course, has a right to use the corn himself and therefore it should be reasonably fit for the ordinary purposes for which such corn is put. It need not, however, be corn of special selection or fit for some exceptional purpose. He likewise has a right to sell it and therefore it should be in such condition to be merchantable.

The court gave the following instruction for the defendant: "The court instructs the jury that, notwithstanding the corn in shuck was in bad condition when the car was opened, yet if plaintiff neglected to avail itself of any opportunities, if any there were, to inspect said car of corn when it arrived at Shreveport, Louisiana, as instructed in bill of lading with draft attached, which bill of lading 'permitted inspection' before acceptance of said corn and payment of draft, and defendant was not guilty of any fraud or fraudulent misrepresentations, then your verdict must be for the defendant.

Passing by the error of introducing the issue of fraud into the case by this instruction, when no such charge had been made and no such issue had been tendered, we consider the instruction to be erroneous in affirming, as it, in effect, did, that if plaintiff had opportunity to inspect at Shreveport before paying the draft, he could not rely upon the implied warranty of sound merchantable quality and must pay the full contract price. Stated in a different way, the instruction is grounded upon a view of the law that in executory contracts for the sale of personal property, a warranty, as a matter of law, does not survive an inspection or an opportunity to inspect by the buyer. There are authorities supporting that view, but we believe the weight of authority and the better reason is with the opposing statement, viz., that if there be a warranty, express or implied, the buyer does not necessarily waive it by acceptance. He may accept the goods and yet rely on his warranty when sued for the contract price. [Morse v. Moore, 83 Maine 473; Babcock v. Trice, 18 Ill. 420; Holloway v. Jacoby, 120 Pa. St. 583; English v. Spokane Com. Co., 57 Fed. Rep. 451; Gould v. Stein, 149 Mass. 570, 577; Brigg v. Hilton, 99 N. Y. 517.] The question whether he has accepted the article in discharge of the contract or has waived the warranty is one of fact to be determined by the triers of the fact.

The first of the foregoing cases (Morse v. Moore) is an instructive discussion of the general subject and such good reason given for the rule we here announce that we readily adopt it in preference to that stated in Pierson v. Crooks, 115 N. Y. 539; and Jones v. McEwan, 91 Ky. 373. In Morse v. Moore, it is truly said that the buyer is frequently in such situation that he cannot well refuse to take and use the goods and that an acceptance ought not to compel him to give up his warranty. In cases of sales *in praesenti* where the property is at hand and the proposition is made to sell, with no prior connection between the parties, the buyer is free to refuse without any room to complain of the proposed seller. If he purchases with the property in his view, the rule of *caveat emptor* is wisely and justly applied. But in cases where, as here, the seller has agreed with the buyer that he will, in the future, sell and deliver certain property to him, a relation has thereby arisen between them. A duty has been assumed by the seller and a state of expectation and business calculation arises in the buyer which ought, ordinarily, to give him more rights than he would have if no such relation had existed. It is therefore more just and reasonable to allow the warranty to survive his acceptance and use of the property. His acceptance may be necessary to save him great loss or inconvenience arising from having relied upon and expected the seller would not disappoint him in the character of the property delivered.

So, therefore, if we allow to defendant the full scope of its insistence that an opportunity and failure to inspect the corn at Shreveport was of the same effect as an actual inspection. And allowing to defendant that the rebilling and shipment of the corn to Lake End was an actual acceptance.. Yet, as appears from what we have written, plaintiff is not cut off from use of the implied warranty which arose out of the transaction.

Nor do we regard the circumstances of plaintiff having paid for the corn as a bar to his right to assert the

The Atkins Bros. Co. v. Grain Co.

warranty.   Payment, in the situation shown, was, at most no more than an acceptance.   It is true that if one receives property where the quality has been warranted, and, with knowledge of the defects, accepts it without protest and *pays for it,* it might be held to be conclusive evidence of an abandonment or waiver of the warranty. But, in this case, the plaintiff made the payment before becoming aware of the defect and therefore is not embarrassed by a voluntary payment with knowledge.   In some circumstances, there is a difference between actual knowledge and acquiescence in what is ascertained, and a mere opportunity to obtain the knowledge without doing so.   So far as the seller is concerned, he ought not to be allowed to say that the buyer is conclusively presumed to know that he has broken his contract, merely on the ground that the buyer had opportunity to know. It is doubtless true that the buyer should examine the property purchased at first reasonable opportunity. But the first and most important omission of duty, under the contract, is upon the seller, in his failing to deliver what he agreed he would supply.

There is a difference in the authorities on the subject whether on discovering the defect covered by the warranty, the buyer should notify the seller, or lose his remedy.   This subject need not be discussed, as the record shows that the defendant was duly notified of the condition of the corn.

The judgment is reversed and the cause remanded. All concur.