## HERCULES POWDER CO. v. RICH. *

(Circuit Court of Appeals, Eighth Circuit. December 1, 1924.)

No. 6494.

1. **Sales 🗝261(6)—Statement of fact by seller respecting quality of goods sold constitutes "warranty."**

A statement of fact respecting the quality or character of goods sold, made by the seller to induce the sale, and relied on by the buyer, constitutes a "warranty."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Warranty.]

2. **Sales 🗝445(2)—Whether parol statement by seller is warranty generally question for the jury.**

Generally the question whether a parol statement by a seller amounts to a warranty is one of fact for the jury.

3. **Sales 🗝441(2)—Finding of warranty of safety fuse held sustained by evidence.**

A finding by a jury that blasting fuse sold by defendant to plaintiff was warranted to be safety fuse, which burned at a speed of a foot per minute, held supported by evidence that defendant was told the purpose for which the fuse was to be used, and that no other kind could be used, and stated that was the kind which would be shipped.

4. **Principal and agent 🗝104(2) — Implied authority of agent to give warranty.**

Where defendant had a branch store in charge of its general sales agent for the state, in which it sold blasting fuse of different speeds of burning, a jury held justified in finding, in the absence of express limitation, that the agent had implied authority to warrant that fuse sold would burn at the particular speed required by the purchaser.

5. **Sales 🗝273(3)—Implied warranty that article is reasonably fit for the purpose for which it is sold.**

Where one contracts to supply an article in which he deals to be used for a particular purpose, and the buyer trusts to the judgment or skill of the seller, there is an implied warranty that the article shall be reasonably fit for the purpose to which it is to be applied.

6. **Estoppel 🗝63—Where express warranty is denied, buyer may avail himself of implied warranty.**

Where defendant denies an express warranty of an article sold to plaintiff, he cannot assert that the express warranty, alleged by plaintiff and denied, is a bar to a warranty which the law would imply.

*Rehearing denied March 18, 1925. Certiorari denied 45 S. Ct. 511, 69 L. Ed. ——.

**7. Appeal and error ⊚⟳173(1)—Defense not presented to trial court cannot be considered by appellate court.**

A defense not made on the trial, nor in any way presented to the trial court, cannot be raised for the first time in the appellate court.

**8. Trial ⊚⟳251(8)—Instruction held properly refused as not applicable to the issues.**

In an action to recover damages caused by a premature explosion of dynamite, alleged to have resulted from a breach of warranty of the burning speed of the fuse sold by defendant to plaintiff, where it was alleged as a defense that the explosion resulted from a different cause through plaintiff's negligence, which defense was fully submitted to the jury, a requested instruction on the subject of contributory negligence *held* properly refused as not applicable to the issues.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action at law by J. F. Rich against the Hercules Powder Company. Judgment for plaintiff, and defendant brings error. Affirmed.

E. Howard Morphy, of St. Paul, Minn., and William R. Robertson, of Joplin, Mo. (Gould G. Rheuby, of Wilmington, Del., and John M. Bradford and Carl W. Cummins, both of St. Paul, Minn., on the brief), for plaintiff in error.

G. O. Patterson, of Clarksville, Ark., and R. W. Robins, of Conway, Ark. (Patterson & Ragon, of Clarksville, Ark., and J. H. Thompson, of Little Rock, Ark., on the brief), for defendant in error.

Before STONE and KENYON, Circuit Judges, and KENNEDY, District Judge.

KENYON, Circuit Judge. Parties will be designated as in the trial court. Defendant is a corporation organized under the laws of the state of Delaware, and engaged in selling powder, dynamite, explosives, and fuses to be used in exploding blasts. In 1920 it had a branch office in Little Rock, Ark., where sales were made. The plaintiff in 1920 was a subcontractor, engaged in the construction of a highway in Faulkner county, Ark., and in the prosecution of said work used dynamite for the purpose of blowing stumps from the right of way of the prospective highway. In the month of August, 1920, he purchased from defendant at its office in Little Rock, Ark., certain fuses for the purpose of exploding dynamite, and claims that one Bailey in charge of said office at Little Rock sold him a fuse which he guaranteed to be a slow burning safety fuse with a burning speed not to exceed 1 foot per minute. Plaintiff claims that at the time he purchased said fuse he explained his needs and requirements to defendant, and that defendant was fully advised of the purposes for which the fuse was to be used. He purchased 4,000 feet of fuse, which was shipped to him. This fuse had been manufactured by the Ensign-Bickford Company of Simsbury, Conn. Plaintiff used the same in his work of blowing stumps from the right of way of the highway, and claims that in the belief that it was a slow burning fuse of the kind he had ordered from the defendant he put in a charge of dynamite for the purpose of blasting out a stump in the right of way, and connected with said dynamite a cap and piece of said fuse about 20 inches in length, and in the usual and proper manner set fire to the same in the belief that he would have time to gain a place of safety before the explosion of the dynamite. Plaintiff claims, however, that said fuse, instead of burning 1 foot to each minute, burned instantaneously, and caused the dynamite to explode before plaintiff had an opportunity to reach a place of safety; that this resulted in serious injury to plaintiff, permanently destroying his sight, bruising and lacerating his head, face, and body, and that he was permanently incapacitated for doing work or labor of any kind.

Plaintiff bases his right to recover upon the alleged fact that the fuse sent him was not the kind ordered by him and agreed by plaintiff's agent to be sent. Defendant, in addition to denying the claims of plaintiff as to warranty, alleges that the injuries suffered by plaintiff were directly contributed to by his own recklessness and negligence in the manner and method of using the material employed in and about the work. The court required plaintiff to elect whether he would rely upon the cause of action pleaded arising out of a tort, or the one alleging breach of warranty. Election was made to rely upon breach of warranty.

At the close of plaintiff's testimony defendant requested the court to direct a verdict in favor of the defendant, which motion was denied. At the close of all the testimony defendant moved the court to direct the jury to return a verdict in its favor, which was likewise denied. At the proper time defendant requested certain instructions which appear in the record, which were refused, and exceptions to the action of the court in refusing the same were preserved. The jury returned a verdict for plaintiff for $30,000.

The questions actually involved arise from the refusal of the court to charge the jury

that, under the law and evidence of the case, the verdict should be for the defendant, and in refusing the request of the defendant to charge the jury as to contributory negligence.

It is the contention of defendant that the alleged conversation between Bailey, agent of defendant, and plaintiff, even if established, is not sufficient to constitute a warranty; further, that there is no evidence showing any authority of Bailey to make the alleged warranty; that there is no evidence of any defect existing at the time the defendant sold the fuse, and therefore no liability on the part of the defendant, and further that the court erred in refusing the request of the defendant to define what constituted negligence on the part of the plaintiff in the alleged preparation and use of the fuse, and in the manner of using the material at the time of the accident.

## I.

Are the words claimed to be used by Bailey sufficient to create a warranty? Plaintiff testifies to his conversation with Bailey:

"I asked the kind of fuse that I would get. He said he would give me safety fuse. I told him that I couldn't use anything except slow-burning safety fuse with a minute per foot. He says, 'That is what I will ship,' and left the impression that—

"The Court: Don't state your impression. Just state what he said. A. He says, 'That is what I will ship.' So he sold me 500 caps, blasting caps, 500 electric globe caps that is to be used with a powder with which we connect the wire, regular 'B' caps; that is, the blasting caps supposed to be used by fuse of various kinds and touching off by fire. I told Mr. Bailey that I couldn't use anything except the slow-burning fuse of a burning speed of a minute per foot. He says, 'That is what you will get.'"

[1] Defendant claims that these words were mere expressions of opinion, not in the nature of affirmation of facts, and were at best merely descriptive.

Mechem on Sales, vol. 2, § 1235, defines a warranty as follows: "Any direct and positive affirmation of a matter of fact, as distinguished from a mere matter of opinion or judgment, made by the seller during the treaty of sale and as a part of the contract, designed by him to induce the action of the purchaser and actually to some extent at least, relied upon by the latter in making the purchase, will be deemed to be a warranty."

Tiedeman on Sales, 283, § 193, announces the doctrine: "But the better opinion is that any positive statement of a material fact which is made with the intention of influencing the buyer to buy, and the truth of which is relied upon by the buyer, will constitute a warranty, whether the seller intended to warrant the goods or not. The intention to warrant is conclusively presumed from his effort to influence the buyer's actions by a statement of fact."

Also 24 R. C. L. § 437: "To constitute an express warranty the term 'warrant' need not be used; no technical set of words are required, and it may be inferred from the affirmation of a fact which induces the purchase and on which the buyer relies and on which the seller intended that he should so do, but it has been said that the words used must be tantamount to a warranty, and not dubious or equivocal."

The rule is well stated in Conkling v. Standard Oil Co., 138 Iowa, 596, 603, 116 N. W. 822, 825, as follows: "A warranty may rest in parol, and no particular form of words is necessary thereto. A warranty arises when there is a distinct assertion or affirmation of fact—which is relied upon—respecting the quality of the goods, or the adaptability thereof to the purpose for which they are desired." See, also, J. I. Case Threshing-Mach. Co. v. McKinnon, 82 Minn. 75, 84 N. W. 646; Cornish v. Friedman, 94 Ark. 282, 126 S. W. 1079; Warren v. Granger, 151 Ark. 453, 236 S. W. 607; Shippen v. Bowen, 122 U. S. 575, 7 S. Ct. 1283, 30 L. Ed. 1172; Briggs et al. v. Rumely Co., 96 Iowa, 202, 64 N. W. 784.

[2] While if the statement relied on as a warranty could not as a matter of law be considered as such it would be the duty of the court to so declare, generally the question of whether parol statements amount to a warranty is a question of fact for the jury. Hughes v. Funston, 23 Iowa, 257; 24 R. C. L. 438; Shippen v. Bowen, 122 U. S. 575, 7 Sup. Ct. 1283, 30 L. Ed. 1172; Hobart v. Young, 63 Vt. 363, 21 A. 612, 12 L. R. A. 693; Titus v. Poole, 145 N. Y. 414, 40 N. E. 228.

[3] If the jury believed the testimony of plaintiff, they were warranted in finding that the party selling the fuse—one Bailey—was fully cognizant of the purpose for which it was intended; that plaintiff told him he could not use anything except a fuse of a burning speed of a minute per foot, and that Bailey assured him that was what would be shipped; that such statement was not one merely of an opinion, but was a distinct affirmation of a fact and intended to influence the sale; and that plaintiff relied on such affirmation in making the purchase.

Hence that the words, if used, constituted a warranty.

Defendant in its argument claims that plaintiff did not rely on the alleged statement of Bailey as a basis of his purchase and that there was no warranty. The record shows that plaintiff was asked the question directly whether he relied on the statements of Bailey as to the burning speed and character of the fuse in his purchase of it and use of it, and replied that he did.

The court stated the law to the jury on this question as follows: "You are instructed that in the purchase of an article any affirmation of a material fact as a fact by the vendor and relied upon as such by the purchaser will constitute a warranty whether the vendor intended to warrant or not, but, if the vendor in making the statement of a material fact does so merely by way of commendation or merely to express his opinion, belief, judgment or estimate, such a statement does not constitute a warranty." This left to the jury the question of whether the words used were merely a commendation of the fuse sold, or were an affirmation of a material fact relied on by the purchasers. It was a correct statement of the law.

## II.

[4] It is contended by defendant that there is no evidence in the record of authority granted in terms to the agent, Bailey, to make the alleged warranty, nor evidence of custom so to do. This is true. The record shows that the fuses complained of were sent to the branch office at Little Rock for the purpose of sale. Bailey was the agent in charge of such branch office, and was engaged in selling the goods of defendant. Whether he be termed a general agent or a general sales agent is of little consequence. He was sales agent for practically the entire state of Arkansas. It is in testimony that nothing was said to Bailey by the officers of the company as to authority to make warranties, nor were there any restrictions in that respect imposed upon him. Bailey testifies that three brands of fuse known as the Crescent, the Anchor, and the Clover were handled at this branch office; that the Clover brand had a burning speed of 40 seconds to the foot with a variation; that the Crescent and the Anchor brands had a burning speed of 30 seconds to the foot. So it is apparent that Bailey was handling for the company fuses of various burning capacity. The length of time the fuses would burn was an essential factor in inducing sales. He testified that the customers relied on his judgment as to the burning speed of the fuses purchased.

Were the circumstances sufficient to sustain a finding of the jury that there was implied authority to make the express warranty? The court submitted the question to the jury as follows: "You are to determine whether or not the defendant gave to its agent, Bailey, authority to warrant the burning period of the fuse sold by it. If there was no express authority, you are then to determine whether or not the authority actually given by the defendant to its agent to sell the fuse would ordinarily and customarily carry with it authority to warrant the burning period of the fuse."

There is a lack of harmony in the multitudinous decisions on the question of a sales agent's implied authority to make express warranties. We refer to a few of the text-writers and authorities dealing with the subject. Benj. on Sales (7th Am. Ed.) § 624, says: "The general rule is, as to all contracts, including sales, that the agent is authorized to do whatever is usual to carry out the object of his agency, and it is a question for the jury to determine what is usual. If, in the sale of the goods confided to him, it is usual in the market to give a warranty, the agent may give that warranty in order to effect a sale."

Mechem on Agency, § 348, p. 219, lays down practically the same rule, viz.: "Authority conferred upon an agent, whether general or special, to sell personal property carries with it, in the absence of countervailing circumstances known to the party with whom he deals, implied power to make in the name of the principal such a warranty of the quality and condition of the property sold as is usually and ordinarily made in like sales of similar property at that time and place." Also the principle is recognized by Mechem and other writers that, "if the sale is one in which, had it been made by the principal in person, the law would imply a warranty, e. g., a warranty of fitness for the contemplated use, express warranty to the same effect, given by the agent, must be deemed to be within the scope of his implied authority."

A good statement of the rule is found in 2 Corpus Juris, 601, 602, as follows: "There is considerable confusion in the decisions as to the implied power of an agent to warrant the quality or condition of personal property sold by him. The rule which is supported by the more numerous and more recent decisions is that if, in the sale of that kind or class of goods which the agent

is empowered to sell, it is usual in the market to give a warranty the agent may give that warranty in order to effect a sale, and the law presumes that he has such authority, and that, if an agent with express authority to sell has no actual authority to warrant, no authority can be implied where the property is of a description not usually sold with warranty; nor can a usage be shown when its effect would be to create between the parties a new contract different in essential particulars, from that actually made by them." And again on page 605: "The implied power of an agent to warrant title and quality rests upon the necessity and propriety of such warranties in the sale of goods. It is not therefore to be extended to other warranties of an unusual sort, however impossible the agent may find it to make a sale without giving such warranties. So also authority to warrant certain qualities conveys no power to give a warranty as to other qualities."

In Pickert v. Marston and others, 68 Wis. 465, 32 N. W. 550, 60 Am. Rep. 876, the court says: "Beyond question, an agent may bind his principal, if he does not exceed the power with which he is ostensibly invested, notwithstanding he has secret instructions from his principal to the contrary."

In Oster v. Mickley, 35 Minn. 245, 28 N. W. 710, it was held that a sales agent, intrusted with personal property to sell, had authority to make a conditional sale on trial, or a contract to take effect as a sale, in case the article on trial work satisfactorily.

In J. I. Case Threshing-Mach. Co. v. McKinnon, 82 Minn. 75, 84 N. W. 646, it was held that a general agent, who has power to sell property for his principal, in the absence of express restrictions upon his right to warrant the same and notice of such restrictions to the purchaser, may be presumed to have authority to do so.

In Wait et al. v. Borne et al., 123 N. Y. 592, 603, 25 N. E. 1053, 1055, the court says: "The idea upon which is founded the right to warrant, on the part of an agent, to sell a particular article, is that he has been clothed with power to make all the common and usual contracts necessary or appropriate to accomplish the sale of the article intrusted to him, and if, in the sale of that kind or class of goods thus confided to him, it is usual in the market to give a warranty, the agent may give that warranty in order to effect a sale, and the law presumes that he has such authority. If the agent, with express authority to sell, has no actual authority to warrant, no authority

can be implied where the property is of a description not usually sold with warranty."

A well-reasoned case is Nixon Mining Drill Co. v. Burk et al., 132 Tenn. 481, 485, 178 S. W. 1116, 1117 (L. R. A. 1916C, 411), where the court says: "The true rule is that an agent upon whom authority has been conferred to sell personal property has implied authority from his principal to make such warranties in respect thereto as the law would imply, had the sale been made by the principal direct, and, in addition, has implied authority to make in the name of the principal such warranty of the quality and condition of the property sold as is usually and customarily made in like sales of similar property at that time and place."

A leading case is Johns v. Jaycox, 67 Wash. 403, 121 P. 854, 856, 39 L. R. A. (N. S.) 1151, 1154, Ann. Cas. 1913D, 471. The court there discusses the adjudicated cases and the confusion arising therefrom on the question of implied authority to warrant, setting forth many decisions holding that an agent upon whom general authority to sell is conferred will be presumed to have authority to warrant unless the contrary appear, and says: "But an examination of those cases shows that, while announcing a very broad rule, they in reality, when applied to the given facts, go only to the extent that the implied power of warranty by the agent upon which a purchaser may rely extends to those things necessary to consummate the contract and usually incident thereto and relating to the title, quality, or condition of the thing sold. In none of them was the rule actually applied as authorizing warranties so extraordinary as that here presented."

Conkling v. Standard Oil Co., 138 Iowa, 596, 116 N. W. 822, is a case where defendant sold to plaintiff oil to be used as a cooling agent. It was claimed that defendant guaranteed the oil was not inflammable and was safe as a cooling medium. The fact was that the oil was inflammable and not safe, and ignited and destroyed plaintiff's machine. The question of the lack of authority of the selling agent to warrant the oil was urged upon the court. There was no evidence in that case of authority granted in terms, but the court based its decision upon the essential attribute conferred on every agency to do "all that is usual and necessary to accomplish the object for which the agency was created." Mechem on Agency, § 347. The court points out that the manufacturer of goods puts them into the hands of sales agents to be sold, and, if the goods are designated for a particular trade, he expects

his agents to make that purpose known. The case differs from this only in that the vendor there is the manufacturer and here is the dealer.

In Schurchardt v. Allens, 1 Wall. (68 U. S.) 359, 369 (17 L. Ed. 642), the court says: "Authority, without restriction, to an agent to sell, carries with it authority to warrant." That statement of the Supreme Court cannot be taken as literally correct without some qualification, for certainly the implied authority of an agent to warrant must be limited to those reasonable and usual warranties which inhere in the sale, and which the agent can be presumed to have authority to make in order to carry out the sale.

It has been held that an agent authorized to sell has implied authority to warrant that a binder will do as good work as any other in the market (Canham v. Plano Mfg. Co., 3 N. D. 229, 55 N. W. 583); that a band cutter and feeder will do good work (Parsons Band Cutter & Self-Feeder Co. v. Haub, 83 Minn. 180, 86 N. W. 14); that the power of the engine sold is sufficient to run the separator (J. I. Case Threshing-Mach. Co. v. McKinnon, 82 Minn. 75, 84 N. W. 646).

The fuses in question here were sent to the agency in Arkansas for the purpose of being sold in the business of the agency. Those in charge of the agency had the authority to do all reasonable things necessary to accomplish the object of its creation, which was to sell explosives, including dynamite caps, fuses, etc. It is in evidence that the agency handled fuses, some of them with a burning speed of 40 seconds to the foot; others 30 seconds to the foot. These fuses were constructed in part at least for the purpose of being used in dangerous work, and the time they would burn was the very test of their serviceability. It appears in the evidence that there were no limitations upon Bailey's authority to make affirmations of warranties concerning the burning speed of the fuses sold, although he had no express authority in terms so to do. In view of his handling fuses of different burning periods, nothing could be more natural, less out of the ordinary, than to have the authority, as such general sales agent, to make warranties of a reasonable period for the fuse to burn. He could not otherwise have made sales. Had the alleged warranty been that the fuse would burn a foot in 40 seconds or in 30 seconds, it would not be contended under this record that the agent had no authority to make such warranty. The alleged express warranty was

3 F.(2d)—2

hardly more than the warranty the law would imply; no more in any event than a matter of 20 seconds of time beyond the time the agent would have unquestioned authority to warrant.

While there was no evidence of custom in sales of this character, the jurors were undoubtedly familiar with buying and selling and with what is reasonable and customary in making sales. The court permitted them to apply their experience and knowledge as to what was usual in sales in the determination of the question involved. Evidence is not merely the language of witnesses on the stand, but also impressions or reasonable inferences that may properly be drawn therefrom. We think the jurors, even in the absence of evidence of express custom as to warranty, were justified in believing and understanding from the record, in the light of their experience as applied to the facts of the case, that the agent, Bailey, could not have made sales of fuses without authority to make a reasonable warranty as to their burning speed; that such warranty was not unreasonable, extraordinary, or unusual; that it was reasonable, proper, and essential in the sale of the goods with which he was intrusted; that that the same was in no way beyond the usage of the business; and that he was clothed with ostensible authority to make the express warranty claimed by plaintiff to have been made. Bouck v. Enos, 61 Wis. 660, 21 N. W. 825; Putnam v. French, 53 Vt. 402, 38 Am. Rep. 682; Tice v. Russell, 43 Minn. 66, 44 N. W. 886; Parsons Band Cutter & Self-Feeder Co. v. Haub, 83 Minn. 180, 86 N. W. 14; Boothby v. Scales, 27 Wis. 626; Williston on Sales, § 445.

### III.

[5] Both parties argue the proposition of implied warranty. In view of our conclusion as to the question of express warranty, discussion of implied warranty is unimportant; however, as the record presents questions of interest with relation thereto, we refer to it briefly.

It is argued by defendant that plaintiff ordered a particular kind of fuse; that he was familiar with it; that he got exactly what he ordered; and consequently, even if the defendant's agent knew the purpose of the work for which the fuse was intended to be used and assured him that it would effect that purpose, it would be the mere expression of an opinion and not an implied warranty. Such is the doctrine announced by this court in Davis Calyx Drill Co. v. Mallory, 137 F. 332, 69 C. C. A. 662, 69

L. R. A. 973, and Grand Ave. Hotel Co. v. Wharton, 79 F. 43, 24 C. C. A. 441; and by the Supreme Court in Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510, 12 S. Ct. 46, 35 L. Ed. 837.

Such claim, however, is not sustained by the record. Bailey, defendant's agent, was fully acquainted with the kind of dangerous work that plaintiff was engaged in and for which he wanted the fuse. Bailey testified that customers generally relied upon his judgment about the burning speed of the fuse, and that he went ahead and sent them the kind of fuse suitable to their particular job; that he did this with plaintiff; and that he assumed plaintiff was relying on him to furnish the kind of fuse that he thought was safe and suitable. Having stated the purpose to Bailey and the particular use for which the fuse was wanted and the purpose to be accomplished, viz., his safety, and Bailey being a sales agent in charge of defendant's agency at Little Rock, and selling these fuses, plaintiff had the right to rely on Bailey's sending him fuse fit and suitable to reasonably accomplish the purpose. He did not have the same means of knowledge as to the fuse that Bailey would be assumed to have. An examination of the fuse would have disclosed nothing to him as to its burning propensities. In fact, there was no way for him to know whether the fuse was a suitable one, and in the absence of such knowledge he had the right to trust to Bailey's judgment. If the jury believed the testimony of plaintiff and his witnesses, they were justified in reaching the conclusion that the fuse was what was known as an instantaneous burning one, even though there was testimony that defendant did not make such fuses, and they were justified in finding that it was not fit for the purposes for which it was sold, and consequently a breach of implied warranty. Of course, the evidence is in marked conflict on this question.

While much has been written on this subject, and many cases have drawn distinctions between the manufacturer and the dealer as to the rule of liability, we think the general law is well stated in Benj. on Sales (7th Ed.) § 645, as follows: "But where a chattel is to be made or supplied to the order of the purchaser, there is an implied warranty that it is reasonably fit for the purpose for which it is ordinarily used, or that it is fit for the special purpose intended by the buyer if that purpose be communicated to the vendor when the order is given."

The rule is also stated in Omaha Coal, Coke & Lime Co. v. Fay, 37 Neb. 68, 75, 55 N. W. 211, 213, as follows: "When one contracts to supply an article in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the vendor, there is an implied warranty that it shall be reasonably fit for the purpose to which it is to be applied; and the better doctrine is that this rule applies to dealers as well as to manufacturers, and not to manufacturers alone, as the plaintiff in error contends." From the multitude of cases on this subject we refer to a few, viz., Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 3 S. Ct. 537, 28 L. Ed. 86; Grand Ave. Hotel Co. v. Wharton, 79 F. 45, 24 C. C. A. 441; Neel v. West Winfree Tobacco Co., 142 Ark. 505, 219 S. W. 326; Oil Well Supply Co. v. John C. Watson et al., 168 Ind. 603, 80 N. E. 157, 15 L. R. A. (N. S.) 868; Flynn v. Bedell Co., 242 Mass. 450, 136 N. E. 252, 15 A. L. R. 1504; Oil-Well Supply Co. v. Priddy, 41 Ind. App. 200, 83 N. E. 623; Edwards v. Dillon, 147 Ill. 14, 35 N. E. 135, 37 Am. St. Rep. 199; Little v. G. E. Van Syckle & Co., 115 Mich. 480, 73 N. W. 554; Zimmerman v. Druecker, 15 Ind. App. 512, 44 N. E. 557; Atkins Bros. Co. v. Southern Grain Co., 119 Mo. App. 119, 95 S. W. 949; English et al. v. Spokane Com. Co., 57 F. 451, 6 C. C. A. 416; Burnett v. Hensley, 118 Iowa, 575, 92 N. W. 678; Heinemann v. Barfield, 136 Ark. 500, 207 S. W. 62; Peterson v. Dreher, 196 Iowa, 178, 194 N. W. 53.

### IV.

[6] Defendant suggests that an implied warranty cannot be read into this case, as plaintiff has expressed in words the warranty he relies on. An express warranty excludes an implied warranty relating to the same subject or of the same general nature, on the theory that no warranty should be implied where the parties with relation to the very same subject have expressed by words the warranty by which they will be bound. This court has held in Reynolds v. General Electric Co., 141 F. 551, 556, 73 C. C. A. 23, 28, that "an express warranty of one of the qualities of an article excludes an implied warranty of other qualities of a similar nature." Benj. on Sales (7th Am. Ed.) 672; Chandler v. Thompson (C. C.) 30 F. 38; J. I. Case Plow Works v. Niles & Scott Co., 90 Wis. 590, 63 N. W. 1013; Reeves v. Byers, 155 Ind. 535, 58 N. E. 713; Alpha Checkrower Co. v. Bradley, 105 Iowa, 537, 75 N. W. 369; Junkin v. Hargrove & Arnold et al., 196 Iowa, 1387, 195 N. W. 217; De Witt v. Berry, 134 U. S. 306, 10 S. Ct. 536, 33 L. Ed. 896. An extended col-

lection of cases on this subject will be found in note to Loxterkamp v. Lininger Implement Co. (Iowa) 33 L. R. A. (N. S.) 501.

Many courts of ability and learning have held that an implied warranty may be available as basis of an action that the article is not suited for purposes for which it was purchased, even when there is an express warranty, unless the implied warranty is excluded by the terms of the express warranty. For instance, that express warranty of title will not exclude implied warranty of quality. Blackmore v. Fairbanks, Morse & Co., 79 Iowa, 282, 44 N. W. 548; Bucy v. Pitts Agricultural Works, 89 Iowa, 464, 56 N. W. 541; Ideal Heating Co. v. Kramer, 127 Iowa, 137, 102 N. W. 840; Petersen v. Dreher, 196 Iowa, 178, 194 N. W. 53.

There is no need, however, of an excursion into that field, as here the alleged express warranty was on the same subject and was merely a slight enlargement of what would be covered by the warranty which the law would imply, and would, if established, exclude an implied warranty relating to the very same subject. However, we think defendant is not in position, as the record stands in this case, to avail itself of this question. In its answer it denied the existence of any express warranty, and throughout the case insisted that there was no express warranty, and still so insists. It should not be heard to say that an alleged express warranty which it denied existed was a bar to a warranty which the law would imply. If the jury found there was no express warranty, we see no reason why they might not find under the evidence showing the circumstances of the sale that there was an implied warranty that the fuse was fit for the purpose intended, viz., of such burning speed as would, in the use to which the agent knew it was to be put, not have been dangerous to plaintiff's safety if properly used, and without negligence on his part. If the plaintiff's testimony was true that the fuse burned instantaneously, there was a breach of implied warranty.

## V.

[7] Defendant contends there is no evidence that proves or tends to prove that at the time defendant sold the fuse in controversy any defect of which plaintiff complains existed in the fuse and that hence no liability is shown on the part of the defendant. Defendant bases this argument on the fact that the fuse in controversy was shipped by defendant August 17, 1920, and that there is nothing to show when, where, or how the alleged defect came into existence.

The question was not raised in the trial. No requests were made to the court to instruct thereon, and this contention did not enter into the theory of trial on either side. Regardless of whether or not there is any merit in the question, it is too late to raise it for the first time in this court.

## VI.

[8] The last question raised by the assignments of error is the refusal of the court to give the following requested instruction: "You are further charged that, if plaintiff was guilty of such conduct in and about his effort to place the shot under the stump where he claims he was injured as an ordinarily cautious and prudent person would not have been guilty of under the same, or similar circumstances, then you must find plaintiff was careless and negligent, and, if such negligence contributed to or caused plaintiff's injuries, then you must find for the defendant." Proper exception was preserved.

Plaintiff sought to recover in this case upon the ground of breach of warranty and also negligence. He was compelled by the court to elect between these two theories, and chose to rely on breach of warranty. Therefore negligence passed out of the case. The action stood then as one for consequential damages alleged to have been suffered by virtue of said breach of warranty. In other words, an action for breach of contract. Some courts have held that contributory negligence is a defense in an action for consequential damages. Bruce v. Fiss, Doerr & Carroll Horse Co., 47 App. Div. 273, 62 N. Y. S. 96; Razey v. J. B. Colt Co., 106 App. Div. 103, 94 N. Y. S. 59; Draper & Cole v. Sweet and others, 66 Barb. (N. Y.) 145; Hitchcock v. Hunt, 28 Conn. 343. We do not feel called upon to determine this question until it squarely arises.

It is doubtful if under the circumstances of this case, the doctrine of contributory negligence has any place in a correct determination of the issues involved. If the injuries to plaintiff occurred in the way that he and his witnesses describe, then no negligence of the plaintiff contributed thereto. If the injuries, on the other hand, were caused by the explosion of the box of caps, as was defendant's theory, then, under the instructions of the court, plaintiff's cause of action failed, regardless of negligence on his part. The court at one stage of the proceedings seems to have so thought, for it said: "I do not think the question of contributory negligence arises at all." However, in the further progress of the case the court and

counsel on both sides seem to have considered contributory negligence as an issue, and near the close of the testimony the following appears, which seems to define the final attitude of the parties and the court on this question:

"Mr. Robins: Very clearly their plea of contributory negligence would be a matter of defense.

"Judge Rheuby: They allege the cause of the injury was defective fuse.

"Mr. Robins: I take it that their defense of all this testimony is one of contributory negligence in the careless handling of this explosive.

"Judge Rheuby: In response to that, our defense is not one of contributory negligence on the part of the plaintiff but one of positive negligence.

"Mr. Robins: For what purpose did you introduce all those experts to prove that this was an unsafe way to handle this?

"The Court: I do not think that the question of contributory negligence arises at all.

"Mr. Patterson: Your honor, if they have the burden of proving negligence, then we ought to have the right to rebut that by showing by other experts that the practice that we used (————) negligent.

"The Court: He may answer."

Evidence was introduced which might raise doubt in the minds of the jury as to what, in fact, did cause the explosion. There was evidence that lighted cigarettes should not be used around explosives. This evidence was introduced apparently to raise the inference that the lighted cigarette in some way caused the explosion, and the defendant did seek to show that the box of dynamite caps exploded from sparks of fire from the lighted cigarette. This was done largely by process of attempted elimination of all other theories of explosion. Proof was made of the open box of caps; the sensitiveness to fire of such caps; the finding of exploded fragments of caps in plaintiff's fuse. Of course, evidence on this theory went to the question of whether the fuse had anything to do with the explosion. There is no testimony in the record that any negligence on the part of plaintiff attempted to be proven had anything to do as a co-acting or contributing cause with the alleged defective fuse in causing the explosion. Certainly, if contributory negligence, under the condition of the record at the time of the court's charge, had any place in the case justifying its submission to the jury, it must be confined to the theory advanced by defendant in its evidence, viz., that the injury was caused by the explosion of the dynamite caps caused by such negligence.

In the statement of the case to the jury the court said: "The defendant denies that it made a warranty with reference to the burning speed of the fuse. It alleges that plaintiff's injury was brought about by his own negligence in handling the fuse and dynamite caps that were used in exploding the dynamite."

Again the court said: "If his injury was brought about by the explosion of something else, that is, if dynamite caps and those caps were negligently left in the position where they were left by him, then it was through his own negligence that he sustained his injury, and he cannot recover from the defendant for the results of his own negligence."

At the close of his instructions the following occurred:

"Mr. Robins: I want to request the court to instruct the jury that the burden of showing negligence on the part of the plaintiff is upon the defendant.

"The Court: Gentlemen of the jury, in considering the question of negligence you are instructed that the burden of proof to establish that negligence is upon the defendant, unless you find such negligence from the testimony of the plaintiff himself, or the testimony introduced in his behalf.

The jury were also charged: "If you are unable to determine from the evidence what caused the explosion resulting in plaintiff's injury, or cannot determine that it was caused from the alleged rapid burning of the fuse, then you must find for the defendant." This, coupled with the instruction heretofore pointed out that " * * * If the injury of the plaintiff was sustained, not by an explosion of dynamite, but by the explosion of certain caps in the proximity, then you are instructed that he cannot recover. The allegations of the complaint are that the plaintiff was injured through the explosion of dynamite brought about by a fuse that burned practically instantaneously. If his injury was brought about by the explosion of something else, that is, if dynamite caps and those caps were negligently left in the position where they were left by him, then it was through his own negligence that he sustained his injury, and he cannot recover from the defendant for the results of his own negligence," covers, we think, any question of contributory negligence raised by the pleadings and supported by the evidence. There was no error in failing to give defendant's requested instruction No.

17. This answers also the question raised as to the refusal of the court to more specifically define negligence.

The judgment of the trial court is affirmed.